Mark Brnovich
Attorney General

Michael E. Gottfried
State Bar No. 010623
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007
Telephone: (602) 542-4951
Fax:  (602) 542-7670
E-mail:  michael.gottfried@azag.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Prison Legal News, a project of the Human Rights Defense Center, Plaintiff, v. Charles L. Ryan, et al., Defendants. | No. CV15-02245-PHX-ROS **MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT** (Doc. 83) |

Defendants[1], through undersigned counsel, move under Fed. R. Civ. P. 12(c) to partially dismiss the First Amended Complaint (doc. 83).  This Motion is supported by the following Memorandum of Points and Authorities, incorporated herein by reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     FACTS**

Plaintiff Prison Legal News (PLN) alleges the following facts.  It publishes and distributes a monthly publication of legal news and analysis to subscribing inmates titled *Prison Legal News*. (Doc. 83, ¶ 14.)  PLN also publishes paperback books of interest to inmates.  (*Id.*)

---

[1] Charles L. Ryan, Gail A. Rittenhouse, Jeffrey A. Hood, Alf Olson and James Riggs.

Pursuant to Arizona Department of Corrections' ("ADC") regulations, the March, April, July, and October 2014 *Prison Legal News* issues were excluded from inmates because they contained sexually explicit content.  (*Id*., ¶¶ 34, 35, 42, 45, 55, 58, 69, 71.) Plaintiff PLN objected to ADC withholding these four publications from inmates. (*Id*., ¶¶ 42, 44, 57, 70.)  Following PLN's objections, all of these issues were delivered to inmate-subscribers.  (*Id*., ¶¶ 49, 63, 72, 76.)  The October 2014 issue was delivered to inmates-subscribers with approximately two paragraphs redacted.  (*Id*., 72.)

In 2011, ADC excluded a PLN-distributed book *The Celling of America.* (*Id*., ¶ 26.)  Once excluded, a publication remains excluded and is not resubmitted for review if subsequently ordered by an inmate.  *See* ADC Department Order ("DO") 914.05-1.14 (effective March 4, 2016).[2]  In 2015, a subsequently ordered copy of the Celling of America was excluded by ADC.  (Doc. 83, ¶ 78.)

## II.    LEGAL ANALYSIS

Publishers have a First Amendment right to communicate with prisoners by mail, and inmates have a First Amendment right to receive this mail.  *Thornburgh v. Abbott,* 490 U.S. 401, 408 (1989).  But this right is subject to "substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security."  *Walker v. Sumner,* 917 F.2d 382, 385 (9th Cir. 1990) (citations omitted).  To promote its correctional goals and maintain institutional security, ADC prohibits sexually explicit publications.  *See* DO 914.07-1.1 (effective March 4, 2016). Plaintiff PLN alleges that neither the Supreme Court or the Ninth Circuit, nor any other

---

[2] "Previous decisions to exclude publications, regardless of any subsequent revisions in standards or criteria, remain final. Previously excluded Publications shall not be resubmitted for review or appeal under this Department Order."  DO 914.05-1.14. (eff. March 4, 2016); DO 914.06-1.13 (eff. Feb. 26, 2010).

The Court may take judicial notice of administrative regulations.  Fed. R. Evid. 201; *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice undisputed matters of public record).

appellate court, has prohibited prisons from excluding written sexually explicit publications or written materials.  As such, these Defendants are entitled to qualified immunity from monetary damages on PLN's First Amendment claims.  Similarly, it has not been clearly established by the Supreme Court or the Ninth Circuit that publishers are entitled to notice of publications excluded from inmates.  Accordingly, these Defendants are entitled to qualified immunity from monetary damages on PLN's Fourteenth Amendment due process claims.

Even if not protected by qualified immunity, the Amended Complaint should be dismissed because it does not link four of these Defendants to any alleged improper acts. Further, the due process damages claim involving the monthly publications should be dismissed because PLN had notice and successfully objected to the withholding of each of these four publications and the due process injunction claim dismissed as moot because the regulation providing notice to publishers have been adopted and implemented. Additionally, any claims that ADC's former publications policy is unconstitutional is similarly moot and the First Amended Complaint does not address the current policy. Finally, ADC's current policy provides for notice to publishers and is constitutional.

### A.    Motion to dismiss standard.

Rule 12(c) and Rule 12(b)(6) motions to dismiss are functionally equivalent. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).  In deciding a motion to dismiss, a court must presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Miree v. DeKalb Cnty.*, 433 U.S. 25, 27 n.2 (1977); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Legal conclusions couched as factual allegations are not given a presumption of truthfulness.  *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649-50 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a 42 U.S.C. § 1983 claim and insufficient to defeat a Rule 12(b) (6) dismissal).

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 579 (2007). The Court in *Twombly* explained that a complaint is read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. *Id*. at 556 n. 3. While blanket assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests. *Id*. "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, § 1216, pp. 235- 36 (2004)).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court emphasized that while a trial court examining a complaint for sufficiency must accept the factual allegations as true, the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 675. Determining whether a complaint states a plausible claim for relief is "a context-specific task" requiring the court "to draw on its judicial experience and common sense." *Id.* Where well-pleaded facts only "permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. *Id.*

**B.   Each Defendant is entitled to qualified immunity from monetary damages on the First and Fourteenth Amendment claims because the law relating to withholding written sexually explicit material from prison inmates and notice to publishers is not clearly established.**

The First Amendment allows prisons to withhold sexually explicit pictures from inmates. *Mauro v. Arpaio*, 188 F.3d 1054, 1063 (9th Cir. 1999) (stating that because the Maricopa County jail's "prohibition on sexually explicit materials fulfills this [*Turner v. Safely*] reasonableness test, we hold that the policy does not violate the First

4

Amendment.")  There is no U.S. Supreme Court or Ninth Circuit authority, however, or any federal appellate authority, prohibiting or directly addressing whether sexually explicit text or written material may similarly be excluded from inmates.  Likewise, there is no U.S. Supreme Court or Ninth Circuit authority, or any federal appellate authority providing guidance as to what types of sexually explicit material prison officials may withhold consistent with the First Amendment.  Consequently, each Defendant here is entitled to qualified immunity from monetary damages on PLN's First amendment claims because the law relating to withholding written sexual explicit material from prison inmates is not clearly established.

### 1.     The law must be apparent to prison officials.

Qualified immunity "gives ample room for [government officials'] mistaken judgments."  *Malley v. Briggs*, 475 U.S. 335, 342 (1986).  It protects "all but the plainly incompetent or those who knowingly violate the law."  *Id*. at 341.  It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft*, 556 U.S. at 675, and "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful."  *Saucier v. Katz*, 533 U.S. 194, 206 (2001), modified in part by *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

There are two steps in the qualified-immunity analysis in a § 1983 case:  de-termining whether the plaintiff has a viable claim, and—if so—whether the law supporting that claim was clearly established.  *Pearson*, 555 U.S. at 232; *Saucier,* 533 U.S. at 20.  Even if these Defendants violated PLN's constitutional rights, they are entitled to have the damages claims dismissed on the second step, under which immunity protects the defendant unless his conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158 (1992).  It "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

The fact that PLN is generally entitled to First Amendment protections does not answer the question here.  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  The right that was allegedly violated "must have been 'clearly established' in a more particularized, and hence more relevant, sense[.]" *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "The contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." *Id.* (emphasis added).  *See also Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (reversing Third Circuit's rejection of qualified immunity because it was applied too narrowly); *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (observing that "our circuit has been repeatedly chastised for conducting the clearly established inquiry at too high a level of generality.").

Thus, the Court must determine "whether a reasonable . . . [prison official] in the [prison official's] position should have known that *his conduct* was undertaken in violation of these rights." *Anderson*, 483 U.S. at 640 (emphasis added).  "Stated differently, 'in the light of pre-existing law[,] the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  "To disentitle public officials to qualified immunity, the unlawfulness of their conduct 'must be apparent.'" *Kinney v. Weaver*, 367 F.3d 337. 384 (quoting *Anderson,* 483 U.S. at 640).  The standard is

high: qualified immunity applies unless "'all reasonable officials would have realized the particular challenged conduct violated the constitutional provision sued on.'" *Id.* (quoting *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997); *accord Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011. "Indeed, if 'officers of reasonable competence could disagree on th[e] issue, immunity should be recognized.'" *Kinney*, 367 F.3d at 384 (quoting *Malley*, 475 U.S. at 342).

Plaintiff has the burden to show that the law was clearly established. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011). Its burden is high because courts must presume that qualified immunity applies:

> The doctrine of qualified immunity assumes that [officers] do not knowingly violate the law. An officer thus is presumed to be immune from any damages caused by his constitutional violation. To overcome this presumption, a plaintiff must show that the officer's conduct was "so egregious that any reasonable person would have recognized a constitutional violation."

*Gasho v. U.S.*, 39 F.3d 1420, 1438 (9th Cir. 1994 (citations omitted).

"We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044. In the District of Arizona, it appears that only decisions of the United States Supreme Court, the Ninth Circuit, and perhaps the Arizona Supreme Court can create clearly established law. *Marsh v. Cty. of San Diego*, 680 F. 3d. 1148, 1159 (9th Cir. 2012). ("In any event, the opinions by a federal district court and an intermediate state court are insufficient to create a clearly established right."). *See also Corrigan v. D.C.*, ___F. 3d___, 15-7098, 2016 WL 6595976, *14 (D.C. Cir. Nov. 8, 2016) ("The source of "clearly established" law is quite constrained as well. Controlling precedent from the Supreme Court, the applicable state supreme court, or from the applicable circuit

7

court, constitutes 'clearly established' law—but it is unclear what else, if anything, does.").[3]

### 2. There is no clearly established law relating to withholding sexually explicit written material from inmates and no clearly established law to guide prison officials as what sexually explicit written material may be properly excluded.

There is no U.S. Supreme Court or Ninth Circuit authority prohibiting or directly addressing whether sexually explicit text or written material may be excluded from inmates. Similarly, no other appellate court has addressed this issue. Because there is no clearly established law addressing this issue, the unlawfulness of Defendants' conduct is not "apparent." *Anderson,* 483 U.S. at 640). As such, these Defendants could not have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Each Defendant is entitled to qualified immunity from monetary damages on the First Amendment claims.

Likewise, there is no U.S. Supreme Court or Ninth Circuit authority providing guidance as to what types of sexually explicit material prison officials may withhold consistent with the First Amendment. Nor has any other federal appellate court addressed

---

[3] It is even unclear whether circuit court authority constitutes "clearly established" law. "[T]he Supreme Court has assumed *arguendo*, that a right may be clearly established by circuit precedent alone even though Supreme Court precedent has not clearly established the right. *See Taylor v. Barkes*, 135 S. Ct. 2042, 2044–45 (2015) (per curiam) (twice noting that "[n]o decision of this Court" was similar to *Taylor* before "[a]ssuming for the sake of argument that a right can be 'clearly established' by circuit precedent despite disagreement in the courts of appeals"); *Reichle v. Howards*, 132 S. Ct. 2088, 2093–94 (2012) (noting "[t]his Court has never held that there is such a right ['to be free from a retaliatory arrest that is otherwise supported by probable cause']" before "[a]ssuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law")." *Anderson v. Valdez*, ____F. 3d.___,15-40836, 2016 WL 6647759, at 16, fn.3 (5th Cir. Nov. 9, 2016) (Jones, Circuit Judge, dissenting).

8

these issues.  Defendants, especially Defendants Riggs and Olson, are required by ADC regulations to review incoming publications and determine if they violate regulations concerning sexual content.  No court, certainly not the Supreme Court or Ninth Circuit, has provided any guidance on how to make these determinations.  If they make the "wrong" decision, if a court eventually disagrees with their decision on how to apply these regulations, if a court says "yes" after they in good faith said "no," should they have to pay money damages?  This cannot be, and is not, the law.

"We believe that the correct rule of law in such a situation is that a public official should be immune from liability for non-discretionary acts performed in good faith pursuant to a policy instituted by higher authorities unless a reasonable official would have known that the policy was unconstitutional." *Hansen v. Cal. Dept. of Corr.*,   920 F. Supp. 1480, 1485-86 (N.D. Cal. 1996).  (citing *Gonzalez v. Tilmer,* 775 F. Supp. 256, 266 (N.D. Ill. 1991) ("[a]n officer who is following a statute or administrative rule should generally be accorded qualified immunity for his actions unless a reasonable officer should have known that the law or rule in question was unconstitutional.")(citing *Richardson v. Bonds,* 860 F.2d 1427, 1432 (7th Cir.1988)); *Pray v. City of Sandusky,* 49 F.3d 1154 (6th Cir. 1995) (concurring judge stated that "[t]he officers are entitled to immunity for all their non-discretionary acts performed in good faith pursuant to the policy." *Id.* at 1161 (citing *Kentucky v. Graham,* 473 U.S. 159, 166-67 (1985)).  *See also Nelson v. Woodford*, CO4-03684 CRB (PR), 2006 WL 571359, *11-12 (N.D. Cal. March 2, 2006), *aff'd* 249 Fed. Appx. 529 (9th Cir. 2007) (finding prison officials have qualified immunity when making individualized determinations as to inmate's publications); *Bauschard v. Martin*, 91 C 7839, 1993 WL 79259, at *5 (N.D. Ill. Mar. 16, 1993) (holding that officer was entitled to qualified immunity when following a Chicago Police Department regulation which gave him discretion as to whether to institute adversarial proceedings).

9

Here, Defendants were simply applying ADC regulations—a "policy instituted by higher authorities"—in good faith.  There is no serious argument that "a reasonable officer should have known that the law or rule in question was unconstitutional."

Without such qualified immunity, prison officials attempting to implement a policy that has not been clearly established to be unconstitutional would be subject to liability for simply making a wrong decision concerning the application of the prison policy.  As noted by the *Hansen* Court:

> [This rule is] supported by the common-sense notion that, absent some assured statutory protection from another source, it would be unfair to subject an official to liability for following orders or policies which he has no authority, under the terms of his employment, to alter or ignore-unless, of course, a reasonable official should have known that the orders or policies offended established law.  Moreover, exposing officials to liability in such situations could give them incentives not to follow directives given by superiors.  This would be bad public policy because it could hamper the smooth and effective operation of government. *Cf. Scheuer v. Rhodes,* 416 U.S. 232, 241-42, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974) ("[p]ublic officials ... who fail to make decisions when they are needed or who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their offices").

*Hanson*, 920 F. Supp. at 1486.

Defendants were implementing a policy which no court has even implied was unconstitutional and no court has established how to determine what type of sexually explicit material may be properly excluded.  Whether their decisions were correct or not, they are entitled to qualified immunity from money damages. *Id*. *See also Krug v. Lutz*, 329 F.3d 692, 699 (9th Cir. 2003) (Corrections officers had qualified immunity when following terms of consent decree); *Bardo v. Clendenin*, No. 11-16031, 474 Fed. Appx. 673. *1 (9th Cir. July 23, 2012) ("The district court properly held that the defendant prison

10

officials were entitled to qualified immunity because [plaintiff] Bardo did not have a clearly established First Amendment right to retain the ad depicting side-nudity."); *Moyer v. Tilden*, 2008 WL 483718, *9 (E.D. Cal. Feb. 20, 2008) (discussing *Hanson*, 920 F. Supp. 1480); *Est. of Torres v. Terhune*, CIV. S982211WBSGGH, 2002 WL 32107951, at *3 (E.D. Cal. Jan. 9, 2002) ("Terhune is entitled to qualified immunity for claims arising out of his policy decisions unless the policy at issue is "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'"(quoting *Jeffers v. Gomez,* 267 F.3d 895, 914 (9th Cir. 2001)). Defendants should have qualified immunity from money damages on PLN's First Amendment claims.

### 3.  There is no clearly established Supreme Court or Ninth Circuit precedent requiring notice to publishers of excluded publications.

Similarly, while other circuit courts of appeals have addressed the issue, neither the Ninth Circuit, nor the Supreme Court, has directly addressed whether publishers or senders of mail to inmates have a Fourteenth Amendment due process right to receive notice of excluded publications. While such obligation may have been assumed, or possibly implied, in Ninth Circuit or Supreme Court decisions, the law concerning the requirement of notice to publishers is not clearly established in this Circuit. Further, as described above, these Defendants were simply following a policy—not requiring notice to publishers until March 2016—that was not unconstitutional on its face and that they were required to follow. Accordingly, each Defendant is entitled to qualified immunity from monetary damages for any alleged Fourteenth Amendment violations.

### 4.  If immune from monetary damages because of qualified immunity, the Defendants should be dismissed.

"Unnecessary litigation of constitutional issues also wastes the parties' resources. Qualified immunity is immunity from suit rather than a mere defense to liability."

11

*Pearson*, 555 U.S. 223, 237 (2009) (internal quote and citation omitted).  If they are immune from being held liable for monetary damages because of qualified immunity, these Defendants should be dismissed with prejudice.

Nor is there any reason that they should remain defendants because they were each sued in their official capacity.  The Eleventh Amendment bars a suit for damages against a state official who is sued in his official capacity in federal court.  *Kentucky v. Graham,* 473 U.S. 159, 169 (1985); *Dittman v. California,* 191 F.3d 1020, 1026 (9th Cir.1999).  Further, a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  PLN has sued all of the Defendants in their individual and official capacities.  (Doc 83, 4-5, ¶¶ 7-11.)  As such, as long as a Defendant remains, there will remain a claim against the state for injunctive and declaratory relief.  To the extent that all Defendants should be dismissed based on qualified immunity, it appears appropriate that perhaps Director Ryan should remain a Defendant here in his official capacity only.

### C. Defendants Ryan, Hood, Rittenhouse, and Riggs should be dismissed because they had no personal involvement with PLN's publications.

In addition to having qualified immunity from monetary damages, Defendants Ryan, Rittenhouse, Hood, and Riggs should be dismissed because they had no involvement with withholding PLN's publications.  Defendant Ryan is ADC's Director  (Doc. 83 at 4, ¶ 7.)  PLN alleges that he has "ultimate responsibility for the promulgation and implementation of ADC policies, procedures, and practices and for the management of the ADC."  (*Id*.)  Defendant Rittenhouse is ADC's Division Director, Support Services.  (*Id*. at 4, ¶ 8.)  PLN alleges that she is "responsible for the promulgation and implementation of policies and practices at the ADC."  (*Id*.)  Defendant Hood was, at the times relevant to the Amended Complaint, ADC's Deputy Director.  (*Id*. at 4-5, ¶ 9.)  PLN alleges that he is

"responsible for the promulgation and implementation of policies, procedures, and practices at the ADC." (*Id*.) Defendant Riggs is ADC's Quality Assurance Administrator of the Office of Publication Review. (*Id*. at 5, ¶ 11.) PLN also alleges, like every other Defendant, that Defendant Riggs is "responsible for the promulgation and implementation of policies, procedures, and practices at the ADC." (*Id*.) The Amended Complaint states that each of these four Defendants is being "sued in [their] individual capacity for damages, and in [their] official capacity for injunctive and declaratory relief." (*Id*. at 4-5, ¶¶ 7-9, 11.)

To state a valid § 1983 claim, a plaintiff must allege that it suffered a specific injury as a result of the conduct of a particular defendant, and it must allege an affirmative link between the injury and the conduct of the defendant. *Rizzo v.* Goode, 423 U.S. 362, 371-372, 377 (1976) (holding that an affirmative link between a defendant's act and plaintiff's injury is required to sustain § 1983 action). A complaint must allege specific facts upon which a plaintiff relies in claiming the liability of each defendant. *Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). Moreover, a plaintiff must demonstrate that each defendant personally participated in the deprivation of a plaintiff's rights. *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002).

Similarly, "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Iqbal*, 556 U.S. at 673 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

When a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley,* 607 F.2d 858, 862 (9th Cir.1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989) (internal citations omitted); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Here, after the initial introductory allegations (doc. 83 at 4-5, ¶¶ 7-9, 11), Defendants Ryan, Rittenhouse, Hood and Riggs are never again mentioned by name in the Amended Complaint, except collectively as "Defendants" or listed with all of the Defendants. Similarly, none of the documents attached to the First Amended Complaint mention Defendants Ryan, Rittenhouse, Hood and Riggs. There are simply no allegations that they specifically did anything in respect to PLN's publications. Likewise, there are no allegations that the publications policy itself is a repudiation of constitutional rights, nor could there be because, as detailed above, there is no clearly established law relating to the withholding of written sexually explicit materials. If the law is not clear, a policy cannot itself be a repudiation of constitutional rights. Finally, to the extent that PLN is attempting to hold government policy makers personally liable for allegedly unconstitutional regulations, damages are not recoverable for facial constitutional claims. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007) ("We affirm dismissal of this claim because the plaintiff is limited to damages, which are unavailable for an overbreadth challenge. … 'On an overbreadth challenge [plaintiff] would also be barred from collecting § 1983 damages which are available only for violations of a party's own constitutional rights.') (quoting *Advantage Media, L.L.C. v. City of Eden Prairie,* 456 F.3d

793, 801 (8th Cir.2006)). *See also Ezell v. City of Chicago,* 651 F.3d 684, 698 (7th Cir.2011) (stating that the remedy for a facial challenge "is necessarily directed at the statute itself and *must* be injunctive and declaratory."); *Tanner Adver. Grp., L.L.C. v. Fayette Cnty., Ga.,* 451 F.3d 777, 786 (11th Cir.2006) (explaining that a facial challenge "cannot give rise to the remedy of damages").

There are no allegations even attempting to demonstrate that any of these four Defendants personally participated in a deprivation of PLN's rights.  Defendants Ryan, Rittenhouse, Hood and Riggs should be dismissed.

**D.      The due process claims should be dismissed because PLN was aware that its monthly publications were excluded, and were successful in contesting the withholding.**

Due process requires notice and an opportunity to be heard.  *See NewGen, LLC v. Safe Cig, LLC*, ___ F.3d___, 13-56157, 2016 WL 6137483, *5 n.5 (9th Cir. Oct. 21, 2016) ("The essence of due process is the requirement of notice and an opportunity to respond."). At the time the four monthly PLN publications at issue were excluded there was no ADC policy requiring notice to publishers of any excluded publication. There is such a policy now.[4]

Nonetheless, despite the absence of a formal notice and hearing procedure, PLN had actual notice that these four publications were excluded, it raised its concerns with ADC, and it was totally successful in reversing three of the four decisions to withhold its publications and largely successful on the fourth publication as it was delivered with a two-paragraph redaction.  Therefore, albeit informally, as to these four publications, PLN received its due process rights.  It had notice and the opportunity to be heard.  And it was successfully heard.

---

[4]  DO 914.08-1.4 (effective March 4, 2016).

At a minimum, PLN suffered no damage because of this alleged due process violation. Any damages connected with these publications—delay in delivery, diversion of resources, lost profits—flow from the alleged First Amendment violations in delaying delivery or redacting publications, not because due process was denied. Accordingly, the due process claims as to the four monthly publications should be dismissed.

### E.     The due process injunction claim should be dismissed.

Shortly after the Complaint was filed, but well before the First Amended Complaint was filed, ADC adopted and implemented a formal Department Order requiring that publishers be given notice and the opportunity to object if their publications are excluded. DO 914.08-1.4 (effective March 4, 2016).

As noted earlier, a suit against a state official in his or her official capacity is no different from a suit against the state itself. *Will*, 491 U.S. at 71. As such, the Eleventh Amendment bars 1983 suits against a state official who is sued in his official capacity in federal court. *Kentucky v. Graham,* 473 U.S. at 169. An exception to the state's Eleventh Amendment immunity exists for prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159-160 (1908); *Kentucky v. Graham,* 473 U.S. at 167, n.14. However, before granting injunctive relief against a state official the Court must find that there is an ongoing violation of federal law. *Verizon Maryland Inc. v. Public Service Com'n of Mary*land, 535 U.S. 635, 645-46 (2002). The past breach of a state official does not fall under the *Ex Parte Young* doctrine's Eleventh Amendment exception. *Edelman v. Jordan*, 415 U.S. 651, 668-69 (1974). An injunction "may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights-Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do." *Continental Group, Inc. v. Amoco Chem. Corp.,* 614 F.2d 351, 359 (3d Cir.1980) (citations omitted).

16

Accordingly, there are no grounds remaining for injunctive relief as to PLN's due process claim. Of course, there are no grounds for equitable relief because ADC, shortly after the Complaint was filed, voluntarily adopted and implemented an administrative regulation requiring that publishers be given notice if their publications are excluded. A "defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 174 (2000). A case becomes moot only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 189 (internal quotation marks and citations omitted). The "party alleging mootness bears a heavy burden in seeking dismissal." *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency,* 581 F.3d 1169, 1173 (9th Cir.2009) (internal quotation marks and citation omitted).

However, "[t]he government's change of policy presents a special circumstance in the world of mootness. Of course there is always the possibility of bad faith and a change of heart. But, unlike in the case of a private party, we presume the government is acting in good faith." *Am. Cargo Transport, Inc. v. U.S.*, 625 F.3d 1176, 1180 (9th Cir. 2010) (citing *White v. Lee,* 227 F.3d 1214, 1243 (9th Cir.2000) (holding that permanent change in HUD's policy with respect to Fair Housing Act investigations was sufficient to render plaintiff's claim moot); *Lyons v. City of LA,* 615 F.2d 1243, 1245–46 & n. 4 (9th Cir.1980) (finding "[t]he city attorney has now announced an official policy" and that "given the change in policy, there is not a strong possibility of a recurrence of the behavior of which the appellant complains")).

Similarly, ADC's voluntary change of policy here should be presumed in good faith. There is no reason to believe that the challenged conduct could reasonably be expected to reoccur. Undersigned counsel is authorized to represent to the Court that ADC will not be removing the Department Order requiring notice to publishers of excluded

17

material.  Further, ADC has no history of adopting new regulations when faced with legal challenges only to subsequently revert back to the old procedures when the lawsuit was over.  *See generally Roy v. State*, CV-03-2150-PHX-SRB, 2006 WL 120328, at \*6 (D. Ariz. Jan. 13, 2006) ("The Court agrees with Defendants that any suggestion that the ADOC will revert to the old policy once the threat of litigation has been removed is but a "speculative contingency.") (citing *Burbank v. Twomey,* 520 F.2d 744, 748 (7th Cir.1975) (dismissing case as moot when "the possibility of recurrence of the challenged conduct is only a speculative contingency.")*; Vieira v. Woodford,* 2002 WL 1226852, \*2 (N.D.Cal. May 30, 2002) (dismissing inmate's claim as moot where prisoner sought modification of a particular prison guideline and, during pendency of litigation, prison policy was so modified, and there was no indication that prison would revert to prior policy)).

Accordingly, the injunction requested to provide notice to publishers should be dismissed as moot.  *See White*, 227 F.3d at 1243 (dismissing complaint against a public agency as moot following a policy change when the new policy "addresses all of the objectionable measures that [the agency] took against the plaintiffs in this case, and even confesses that this case was the catalyst for the agency's adoption of the new policy."); *McCarthy v. Ozark Sch. Dist*., 359 F.3d 1029, 1036 (8th Cir. 2004) ("a speculative possibility is not a basis for retaining jurisdiction over a moot case." *Dong v. Holder*, CV-09-1594-PHX JWS, 2011 WL 1119543, at \*6 (D. Ariz. Feb. 7, 2011), *report and recommendation adopted in relevant part, rejected in part,* 2:09-CV-01594 JWS, 2011 WL 1119072 (D. Ariz. Mar. 28, 2011) (finding that burden met because the allegedly wrongful behavior could not reasonably be expected to recur when agency issued guidance memoranda articulating the nationwide policy).

**F.    The First Amended Complaint only challenges ADC's previous publications policy.**

Effective March 4, 2016, ADC revised its regulations concerning incoming publications.  Plaintiff PLN filed its Amended Complaint on October 24, 2016 (doc.83) and moved to amend approximately thirty days before.  Despite these new regulations having been in effect for about six months, the First Amended Complaint makes no substantive allegations challenging ADC's current publication policy.  The four monthly *Prison Legal Ne*ws issues and the *Celling of America* book were all subject to the policy that was effective before March 4, 2016 (the "current policy").  Understandably, the "overwhelming bulk of the First Amended Complaint focuses on the policy in place effective February 26, 2010 (the "former policy").  The only publication policy attached to the Fist Amended Complaint is the former policy.  (Doc. 83-1.)  In fact, the only time the First Amended Complaint even refers to the current policy is when complaining about problems with the new policy's "notice to publishers" provisions in the first month or so after it was implemented.  (Doc. 83 at 21, ¶ 86.)  This paragraph was one of the paragraphs added to the First Amended Complaint.

Arguably, this paragraph challenges the constitutionality of the notice-to-publishers provisions of the current policy, although it is nothing more than an unsupported, almost in-passing mention:  "Although ADC policy was changed as of March 4, 2016, it remains constitutionally invalid and Defendants fail to comply with the policy as changed." (*Id*.) The allegation then states problems with implementing the new notice policy in its initial months.  (*Id*.)  Other than this singular paragraph, the First Amended Complaint contains no allegations addressing or involving any other provision of the current policy, and specifically nowhere challenges the constitutionality of the current policy as it applies to publications.

19

The Court can take judicial notice of the proceedings thus far to unequivocally conclude that PLN is attempting to determine the constitutionality of ADC's publications policy. *See, e.g.* Doc. 36 at 3. Nonetheless, there is no legitimate argument that the First Amended Complaint fails to address the publication provisions of the current policy (other than notice to publishers) and no legitimate excuse for this pleading ignoring a regulation implemented six months before amendment, if this was an argument PLN wished to pursue. Perhaps this argument is academic and, in the interest of resolving disputes in one forum at one time, the Defendants should simply agree to resolve the constitutionality of ADC's current publication regulations in this proceeding despite the fact that they are nowhere addressed by the amended complaint.

Perhaps, but PLN has consistently insisted that extensive, expensive, wasteful, and needless discovery of how third-party publishers are treated is necessary to facially challenge ADC's publications policy. Not only is it wrong that such third-party information and discovery is relevant to challenging any publication regulation, it is basing its challenge on a First Amended Complaint that does not even address the current policy. *See Vill. of Hoffman Estates, Inc. v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95 (1982) ("The facial validity of a statute is a question of law."); *Pickup v. Brown*, 740 F.3d 1208, 1234 (9th Cir. 2014) ("whether the statute is overbroad is a question of law that does not depend on the factual record developed below.") (citation and internal quotation omitted); *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) ("[Plaintiff] asserts that claims of vagueness and over-breadth must be considered separately from the requirement that prison regulations must be 'reasonably related to legitimate penological interests.' *Turner,* 482 U.S. at 89, 107 S.Ct. 2254. The *Turner* analysis applies equally to facial and 'as applied' challenges."); *Ezell*, 651 F.3d at 697–99 ("In a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant. It is enough

20

that '[w]e have only the [statute] itself" and the "statement of basis and purpose that accompanied its promulgation.'" (Quoting *Reno v. Flores,* 507 U.S. 292, 300–01 (1993)).

For the same reasons described in section E above, the claims that the former policy is unconstitutional should be dismissed as moot. And because PLN has unreasonably and unnecessarily expanded these proceedings by conducting extensive discovery on moot claims that do not exist in the First Amended Complaint, any claims about the current policy should be dismissed as not supported or raised by the First Amended Complaint's allegations.

### G.    The provisions requiring notice to publishers of any excluded publications are constitutional.

The First Amended Complaint alleges that publishers such as PLN are entitled under the Fourteenth Amendment to notice of excluded publications. (Doc. 83 at ¶¶ 33, 40, 53, 67, 80-83, 85, 86, 106.) Effective March 4, 2016, ADC adopted and implemented regulations requiring that publishers be given notice of excluded publications and the right to administratively appeal such decisions. Department Order 914.06-1.17 provides that:

> The Department will provide notice to publishers via email of the decision to exclude a publication or part of a publication within seven calendar days following the decision to exclude. If no email address is available, the notice will be sent to the publisher's mailing address as specified within the publication. Publishers will have the same opportunity to seek an appeal as an inmate under Department Order 914. The notice to the publisher shall include sufficient information to identify the specific publication and the reason(s) for the exclusion.[5]

Department Order 914.08-1.2.1 provides that:

> The Office of Publication Review shall notify publishers within seven calendar days when one of their publications or part of a publication is excluded.

---

[5] For the Court's convenience a copy of DO 914 is attached as Exhibit A. It can be found on ADC's website at: https://corrections.az.gov/ sites/default/files/policies/ 900/09140.pdf

21

        1.2.1.1      Publishers may request an appeal by notifying the Office of Publication Review within 30 calendar days of the publisher's receipt of the exclusion.

PLN claims that notice to publishers of excluded publications is constitutionally required, DO 914 unambiguously requires such notice.  PLN does not allege any substantive reasons why or how these provisions are unconstitutional.  The allegations that the new provisions were not followed in their first month (doc. 83, ¶ 86) has no relevance as to whether the provisions themselves are constitutional.  Therefore, PLN's claims that the notice-to-publishers provisions are unconstitutional (*id.*) should be dismissed.

## III.    CONCLUSION

Wherefore, it is respectfully requested that (1) each Defendant be dismissed because they have qualified immunity from monetary damages on the First and Fourteenth Amendment claims; (2) Defendants Ryan, Rittenhouse, Hood and Riggs be dismissed because the First Amended Complaint does not allege that they had any personal involvement with PLN's publications; (3) the due process claims, including declaratory relief, as to PLN's four monthly publications be dismissed because PLN had notice and successfully objected to the exclusion of the publications; (4) the due process injunction claim. including declaratory relief, be dismissed as moot; (5) any challenge to the former publications provisions also be dismissed as moot, including declaratory relief; (6) any constitutional challenges to the current policy, including declaratory relief, dismissed as unsupported by the First Amended Complaint; (7) any claims, including declaratory relief, that the current notice-to-publishers provisions are unconstitutional be dismissed; (8) Defendants be awarded their fees and costs as allowed by law; and (9) for such other relief deemed proper.

… …
… …

22

RESPECTFULLY SUBMITTED this 21st day of November, 2016.

MARK BRNOVICH
Attorney General


/s/ Michael E. Gottfried
Michael E. Gottfried
Assistant Attorney General
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2016, I electronically transmitted the attached document to the Clerk of Court using the CM/ECF System.

This document and the Notice of Electronic Filing were served by mail on the same date on the following, who are registered participants of the CM/ECF System:

Lance Weber
Sabarish Neelakanta
Human Rights Defense Center
P.O. Box 1151
Lake Worth, FL 33460-1151

Lisa Ells
Krista Stone-Manista
Andrew Spore
Rosen, Bien, Galvan & Grunfeld LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105-2235

David J. Bodney
Heather Todd Horrocks
Michael A. DiGiacomo
Ballard, Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Attorneys for Plaintiff Prison Legal News


s/Michael E. Gottfried
#5459601