1

2

3

4

5

6

7

8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

9

10

11

12

13

14

| | |
|---|---|
| Prison Legal News, | No. CV-15-02245-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Defendants. | |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This case concerns the constitutionality of inmate mail policies at correctional facilities within Arizona managed by the Arizona Department of Corrections ("ADC"). Plaintiff Prison Legal News ("Prison Legal") sued under 42 U.S.C. § 1983 alleging Defendants Charles L. Ryan, Gail A. Rittenhouse, Jeffrey A. Hood, Alf Olson, and James Riggs ("Defendants") violated the First Amendment by promulgating and implementing an ADC mail policy which rejected Prison Legal publications mailed to ADC inmates. Prison Legal also brought a § 1983 claim alleging Defendants violated the Fourteenth Amendment by failing to provide both Prison Legal and inmates with notice and opportunity to appeal the prison's censorship decision.

Defendants filed a partial motion for judgment on the pleadings.[1]  (Doc. 114.) Prison Legal opposed, and Defendants replied.  (Docs. 120, 132.)  Defendants' motion

---

[1] Defendants captioned their filing as "Motion to Partially Dismiss First Amended Complaint, but substantively requested relief under Rule 12(c) as a motion for judgment on the pleadings.  (Doc. 114 at 1.)  Thus, the Court will construe this motion as a Rule 12(c) motion for judgment on the pleadings.

for judgment on the pleadings will be **GRANTED** in part and **DENIED** in part.

I.     BACKGROUND

The First Amended Complaint ("FAC") alleges the following.  Prison Legal publishes and distributes a monthly journal of corrections news and analysis called *Prison Legal News: Dedicated to Protecting Human* Rights ("*Prison Legal News*"). (Doc. 83 at 6.)  It also publishes and distributes paperback books about the criminal justice system and legal issues impacting prisoners to help prisoners foster a better understanding of criminal justice policies.  (*Id.*)  Through engaging in issues including "operations of corrections facilities, jail and prison conditions, prisoner health and safety, and prisoners' rights," Prison Legal promotes public safety through educational and journalistic avenues.  (*Id.* at 7.)  At the time Prison Legal filed the FAC, it had ninety-seven monthly subscribers at ADC facilities.  (*Id.*)

A.     ADC Mail Policy and Alleged Censorship

Prison Legal alleges Defendants promulgated and implemented policies, procedures, and practices at the ADC which censored and denied delivery of certain publications to prisoners at the ADC.  (*Id.* at 4.)  Specifically, Prison Legal alleges the following Defendants were responsible for promulgating and implementing ADC policies in the instant case:  (1) Defendant Charles Ryan ("Ryan"), Director of the ADC who has ultimate responsibility for ADC policies; (2) Defendant Gail Rittenhouse ("Rittenhouse"), Division Director of Support Services of ADC; (3) Defendant Jeff Hood ("Hood"), Deputy Director of ADC; (4) Defendant Alf Olson ("Olson"), ADC employee in the Office of Publication Review who retired as of May 31, 2016; and (5) Defendant James Riggs ("Riggs"), ADC employee and Quality Assurance Administrator in the Office of Publication Review.  (*Id.* at 5.)

Beginning in March 2014, Defendants began refusing to deliver certain issues of *Prison Legal News* to prisoner subscribers.  (*Id.* at 7.)  Pursuant to ADC mail policy, facilities prohibited publications containing "depictions or descriptions that incite, aid, or abet riots, work stoppages, or means of resistance" or "pictures, photographs,

illustrations, text or other content that may encourage unacceptable sexual or hostile behaviors, or creates a hostile environment for volunteers, including but not limited to sexual representations of inmates, law enforcement, military, professional medical staff, teachers and Clergy."  (*Id.* at 8; Doc. 83-1, Ex. A., ADC DO 914.08, Policy Numbers 1.1.1; 1.1.18.)  The policy also prohibited "sexually explicit material."[2]  (Doc. 83-1, Ex. A., ADC DO 914.07, Policy Numbers 1.2.)  Defendants' mail policy does not contain an exception permitting delivery of publications that describe sexual acts in a non-salacious way such as reporting on the facts of a published legal decision.  (*Id.* at 9.)

Under the mail policy implemented and executed by Defendants, four issues of *Prison Legal News* were excluded: March 2014, April 2014, July 2014, and October 2014.  (*Id.* at 7.)  Prison Legal eventually heard from subscribers that the ADC excluded these issues.  (*Id.* at 8.)  Prison Legal's investigation revealed that Defendants claimed these issues contained depictions of riots, sexually explicit material, or material that may encourage unacceptable sexual or hostile behaviors.  (*Id.* at 10-11, 12-13, 15, 18.)

However, ADC did not indicate which pages were at issue, and Prison Legal alleges none of the articles contained the type of content cited by the ADC.  (*Id.* at 11, 13, 15-16, 18.)  Rather, Prison Legal believes these four issues were censored because they all contained news articles about court cases and legal opinions involving prisoners who suffered rapes and sexual assaults by jail or prison guards.[3]  (*Id.*)  Prison Legal asserts

---

[2] "Sexually explicit material" is defined as "publications that contain any of the following acts and behaviors either visually, written or in audio (non-lyric) form: [(1)] Physical contact by another person with a person's unclothed genitals, pubic area, buttocks, or if such a person is a female, breast[; (2)] Sadomasochistic abuse[; (3)] Sexual intercourse, vaginal or anal, fellatio, cunnilingus, bestiality or sodomy[; (4)] Masturbation, excretory functions, and lewd exhibition of the genitals[; (5)] Incestuous sexual activity[; (6)] Sexual activity involving an unwilling participant, or a participant who is the subject of coercion, or any sexual activity involving children."  (Doc. 83-1, Ex. A., ADC DO 914.07, Policy Numbers 1.2.)

[3] Prison Legal believes these issues were censored because of the following articles: (1) "Ninth Circuit Holds Staff Sexual Abuse Presumed Coercive; State Bears Burden of Rebutting Presumption"; (2) "Kitchen Supervisor Gets Prison Time for Sexually Abusing Two Prisoners"; (3) "New York Jail Guard Sentenced for Sexually Abusing Seven Prisoners"; and (4) "Tenth Circuit Holds 'Consensual' Sex Defeats Prisoner's Eighth Amendment Claim."  (*Id.* at 11, 13, 16, 18.)

1    Defendants did not return the censored issues on their own volition, nor did they provide
2    notice to Prison Legal regarding their refusal to deliver these issues. (*Id.* at 7-8.)

3    From at least February 2011 to May 2015, Defendants censored a book distributed
4    by Prison Legal called *The Celling of America an Inside Look at the U.S. Prison Industry*.
5    (*Id.* at 19.)   Prison Legal did not receive any notice from Defendants that this book
6    would not be delivered to the addressed recipients, nor did Defendants provide an
7    opportunity for Prison Legal to appeal the decision to refuse delivery of this mail. (*Id.* at
8    19-20.)  Prison Legal eventually found out Defendants excluded this publication from
9    ADC facilities pursuant to DO 914.08, "Unauthorized Publications and Material,"
10   because of "Riots/Work Stoppages/Resistance," under Policy Number 1.1.1.   (*Id.*)
11   However, Prison Legal does not believe there is any such material in this publication.
12   (*Id.* at 19-20.)  Prison Legal never received notice from Defendants about this exclusion
13   and at no time did Defendants provide an opportunity for Prison Legal to appeal the
14   rejection of the mail. (*Id.* at 20.)

15   Prison Legal believes that ADC's censorship policies and practices are widespread
16   as Defendants refused to deliver issues to ADC inmate subscribers from publications
17   such as *Bloomberg Business*, *The Economist*, *National Geographic*, and *Newsweek*. (*Id.*
18   at 9.)

19   **B.    March 4, 2016 Revised Policy and Alleged Censorship**

20   In March 4, 2016, a new ADC policy went into effect ("2016 Revised Policy").
21   (*Id.* at 21.)  Under the 2016 Revised Policy, the ADC still prohibited publications based
22   on "sexually explicit material," and depictions that "incite, aid, or abet riots, work
23   stoppages, means of resistance," however, the Office of Publication Review must now
24   notify publishers within seven days when a publication is excluded and inmates may
25   request an appeal in some situations. (Doc. 114-1 at 17, Ex. A., ADC DO 914.08-1.2.1,
26   1.2.1.1.)   Even with the revision, Prison Legal alleges Defendants' policies remain
27   constitutionally invalid, and Defendants have failed to comply with the policy as revised.
28   (*Id.* at 21.)   Specifically, the First Amended Complaint alleges that under the 2016

Revised Policy, Defendants censored *Prison Legal News*'s March 2016 and April 2016 issues without providing any notice to Prison Legal or any opportunity to appeal the rejection decision. (*Id.*)

### C.    Claims of Relief

Prison Legal brought two claims of relief against Defendants under 42 U.S.C. § 1983. (*Id.* at 24.) First, under the First Amendment claim, Prison Legal brings a facial challenge alleging the mail policy to censor written sexually explicit publications without any exceptions is not rationally related to a penological interest. (*Id.* at 22.) Further, Prison Legal argues that the ADC mail policy is overbroad. (*Id.* at 21-22.) Prison Legal also brought an as-applied First Amendment challenge for the issues and the book that ADC censored. (*Id.* at 22.)

Second, Prison Legal claims the ADC mail policy facially failed to provide due process in violation of the Fourteenth Amendment. (*Id.* at 24-25.) Further, Prison Legal brings an as-applied challenge claiming Defendants' failure to give Prison Legal sufficient notice of the censorship and an opportunity to be heard deprived Prison Legal's liberty and property without due process in violation of the Fourteenth Amendment. (*Id.*)

Prison Legal sues Defendants Ryan, Rittenhouse, Hood, and Riggs in their official capacity for equitable relief and sues all five defendants in their individual capacity for damages. (*Id.* at 4-5.)

## II.    DISCUSSION

A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The only significant difference is that a Rule 12(c) motion is properly brought "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Court may grant a Rule 12(c) motion for judgment on the pleadings only if taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Dismissal is appropriate only where the complaint

lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Generally, district courts have been unwilling to grant a Rule 12(c) dismissal "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).

Defendants' partial motion for judgment on the pleadings makes three kinds of arguments: (1) the First and Fourteenth Amendment as-applied claims for damages against Defendants in their individual capacity should be dismissed because Defendants are entitled to qualified immunity; (2) Prison Legal's claims should be dismissed because the complaint lacks a cognizable legal theory or sufficient facts to support such a theory; and (3) Prison Legal's First and Fourteenth Amendment claims are moot in light of the ADC's 2016 Revised Policy. The Court will analyze each of Prison Legal's claims implicated by Defendants' motion, but because mootness is a jurisdictional issue, the Court will address it first.

### A.     Preliminary Legal Issues - Mootness

Defendants argue Prison Legal's First Amendment and Fourteenth Amendment claims should be dismissed as moot because Prison Legal seeks injunctive relief and the ADC has since voluntarily amended its policies. (Doc. 114 at 16-21.) "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). However, the question of mootness "is not whether the precise relief sought at the time [the case] was filed is still available" but rather "whether there can be any effective relief." *McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015).

However, even when the issues presented are no longer "live," a "defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174 (2000).

1    A case is moot only if "subsequent events made it absolutely clear that the allegedly

2    wrongful behavior could not reasonably be expected to recur." *Id.* at 189. The party

3    alleging mootness bears a heavy burden in seeking dismissal. *Rosemere Neighborhood*

4    *Ass'n v. U.S. Envtl. Protection Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009). Mootness

5    "inquiries . . . require courts to look to changing circumstances that arise *after* the

6    complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001)

7    (emphasis added). Here, Defendants have not met their heavy burden.

8        To determine whether Defendants met their burden, the Ninth Circuit examines the

9    type of executive action at issue. "[W]hile a statutory change 'is usually enough to render a

10   case moot,' an executive action that is not governed by any clear or codified procedures

11   cannot moot a claim." *McCormack*, 788 F.3d at 1025 (quoting *Bell v. City of Boise*, 709

12   F.3d 890 (9th Cir. 2013)). A court is "less inclined to find mootness where the [executive

13   action] could be easily abandoned or altered in the future." *See Bell*, 709 F.3d at 901

14   (analyzing an executive action in the form of a new policy as opposed to an individualized

15   determination). "[R]epeal or amendment of an ordinance by a local government or agency

16   does not necessarily deprive a federal court of its power to determine the legality of the

17   practice." *Id.* at 899.

18       First, Defendants argue Prison Legal's First Amendment claims are moot because

19   in their view the FAC only dealt with the initial policy. (Doc. 114 at 21.)[4] However, this

20   view is incorrect as the FAC also makes allegations pertaining to the 2016 Revised

21   Policy. And even though Defendants changed their mail policy in 2016, the 2016

22   Revised Policy on its face still censors publications based on written sexually explicit

23   material. (*Id.* at 21; Doc. 114-1 at 17, Ex. A., ADC DO 914.08-1.2.1, 1.2.1.1.)

24   Furthermore, the 2016 Revised Policy does not moot Prison Legal's overbroad argument,

25   nor does it moot Prison Legal's as-applied challenge since the FAC alleges Defendants

26   continued to censor additional issues in March and April of 2016 under the 2016 Revised

27

28   ———————————
        [4] Note this argument is inconsistent with Defendants' subsequent argument where
     they construe separate constitutional claims against the 2016 Revised Policy and they ask
     the Court to dismiss the claims for the 2016 Revised Policy.

Policy.  (Doc. 83 at 21-23.)  The 2016 Revised Policy even explicitly states that previously excluded publications shall not be re-submitted for review or appeal.  (Doc. 114 at 2 n.2.)  Thus, Prison Legal's First Amendment challenges remain live controversies, and the 2016 Revised Policy does not render the First Amendment claims moot.

Second, Defendants also argue that Prison Legal's Fourteenth Amendment claim based on inadequate notice was rendered moot when the Defendants changed their policy in 2016 to add a provision that requires notice to publishers.  (Doc. 114 at 16-18.)  The FAC contends there is still a live controversy over whether the 2016 Revised Policy is facially constitutional.  (*See* Doc. 83 at 21.)  However, according to the 2016 Revised Policy, the ADC is required to notify publishers within seven days of the decision to exclude, and publishers have thirty days to appeal this decision.  Although Prison Legal contends there is still a live controversy, the facial Fourteenth Amendment claim is rendered moot.  The FAC's Fourteenth Amendment as-applied challenge, however, remains a live controversy.  The FAC specifically alleges Defendants continued to censor publications under the new policy while failing to provide notice and opportunity to Prison Legal for censoring the March 2016 and the April 2016 issues.  (Doc. 83 at 21.)[5] Thus, Defendants' voluntary act of changing its policies in 2016 does not render Prison Legal's Fourteenth Amendment claims moot.[6]

**B.     Qualified Immunity in § 1983 Claims**

To state a claim under § 1983, the plaintiff must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes.  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

---

[5] Though the Court rejects Defendants' mootness argument for the as-applied challenge at the outset, Prison Legal's sur-reply (lodged at Doc. 162) proposes additional evidence that the Fourteenth Amendment claims remain live controversies.

[6] Defendants separately argue the FAC lacks a cognizable legal theory with regard to the facial Fourteenth Amendment challenge of the 2016 Revised Policy and thus should be dismissed.  (Doc. 114 at 21.)  Because the Court finds the facial claim moot, this argument need not be addressed.

However, "[a]n official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  The inquiry is two-fold.

First, it must be considered whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show the [defendant's] conduct violated a constitutional right[.]" *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).  Second, whether the right was "clearly established" at the time of the charged incident.  *Id.* at 199-200.  The Supreme Court in *Ashcroft v. al-Kidd* instructed courts "not to define clearly established law at a high level of generalization."  563 U.S. 731, 742 (2011) (stating as an example that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established").  The Supreme Court also instructed that it "do[es] not require a case directly on point."  *Id.* at 741; *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (reiterating "officials can be on notice that their conduct violates established law even in novel factual situations").  In situating a particular case between the two poles of *al-Kidd*, "[the] contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Hope*, 536 U.S. at 739 (2002).

A plaintiff must succeed on both prongs to deny a defendant qualified immunity. *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012).  The court may exercise its discretion in deciding which of the two prongs should be addressed first in light of the particular case's circumstances.  *Liberal v. Estrada*, 632 F.3d 1064, 1076 (9th Cir. 2011).  Because Defendants only seek qualified immunity in limited contexts within both constitutional claims, the Court will only address Defendants' arguments.

### 1.   Fourteenth Amendment

Prison Legal brings both a facial and as-applied Fourteenth Amendment challenge to the mail policies.  (Doc. 83.)  However, Defendants' qualified immunity argument only challenges the Fourteen amendment as-applied claim regarding the notice

component.  (Doc. 114 at 11.)  Defendants argue their individual claims for damages should be dismissed because they are entitled to qualified immunity from the as-applied challenge regarding providing notice to publishers.  (*Id.* at 4, 11.)

a.    *Constitutional Violation*

The Fourteenth Amendment protects against the deprivation of property or liberty without procedural due process.  *Brady v. Gebbie*, 859 F.2d 1543, 1547 (9th Cir. 1988).  "To establish a due process violation, a plaintiff must show that he has a protected property interest under the Due Process Clause and that he was deprived of the property without receiving the process that he was constitutionally due."  *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008).  The Ninth Circuit held that because both inmates and publishers have a constitutionally protected right to receive subscription non-profit organization standard mail, such mail must be afforded the same procedural protections as first class and periodicals mail under Department regulations.  *Prison Legal News v. Cook*, 238 F.3d 1145, 1152-53 (9th Cir. 2001) (holding that a department's ban on standard rate mail was unconstitutional as applied to subscription mail).

Prisoners do have a liberty interest in receiving mail, and therefore they are entitled to some procedural due process when they are deprived of that mail.  *See Krug v. Lutz*, 329 F.3d 692, 696-97 (9th Cir. 2003).  "The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment."  *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).  Three baseline protections must be afforded: (1) notice of the rejection, (2) a reasonable opportunity to appeal the rejection, and (3) review by an independent official.  *See Procunier*, 416 U.S. at 418-19; *Krug*, 329 F.3d at 697 (independent, 2-level review); *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999) (notice).  Publishers have a constitutional interest in notice and opportunity.  *Cook*, 238 F.3d at 1152-53.  Here, Prison Legal alleged that it did not receive notice a number of issues both under the original mail policy as well as under the

1    2016 Revised Policy.  Thus, there was a constitutional violation.

2                    b.    *Clearly Established Law*

3            Defendants argue that there is no clearly established law requiring notice to

4    publishers of excluded publications and thus a reasonable prison official at the time could

5    not have known that not providing notice would be unconstitutional.  (Doc. 114 at 11.)

6    This is incorrect.

7            Supreme Court and Ninth Circuit precedence before 2014 made clear that a

8    publisher is entitled to some procedural due process, just like an inmate, when an inmate

9    recipient is deprived of mail.  *Procunier*, 416 U.S. at 418-19; *Cook*, 238 F.3d at 1152-53.

10   Although this right is not unqualified, baseline protections include providing notice.

11   *Cook*, 238 F.3d at 1152-53.  Thus, a reasonable prison official from 2014 to present

12   would have known that he has to provide notice to Prison Legal (as well as the inmate)

13   when censoring its publications.  Thus, Defendants are not entitled to qualified immunity

14   with respect to the as-applied claim under the Fourteenth Amendment.

15                    2.    First Amendment

16           Prison Legal brings both a facial and as-applied First Amendment challenge to

17   ADC's mail policies.  (Doc. 83.)  Prison Legal argues that the ADC's policy of banning

18   visual and textual descriptions of sexual content without exception, including legal

19   discussions of sexual assault cases and decisions, is unconstitutional.  (Doc. 120 at 5.)

20   Prison Legal also contends that the application of the regulation as applied to him

21   violated the First Amendment when the ADC withheld several publications involving a

22   book and articles describing legal decisions.  (Doc. 83 at 22.)  However, Defendants'

23   motion only seeks qualified immunity from the as-applied challenge.  (Doc. 114 at 4, 8-

24   11.)   Specifically, Defendants do not challenge whether there was an as-applied

25   constitutional violation, and only argues that there is no clearly established law that

26   withholding sexually explicit written material is a First Amendment violation.

27                    a.    *Constitutional Violation*

28           "Publishers have a First Amendment right to communicate with prisoners by mail,

and inmates have a First Amendment right to receive this mail." *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005); *see also Hrdlicka v. Eniff*, 631 F.3d 1044, 1049 (9th Cir. 2011) (finding the well-established First Amendment interest in distributing and receiving applies to a publisher's interest in distributing literature regardless of whether a recipient requested the information).

Although publishers have this First Amendment right to communicate with inmates by mail, this right is limited and can be regulated. The Supreme Court in *Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). There are four factors relevant to the *Turner* reasonableness inquiry: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the extent of impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Id.* at 89-90. The same analysis applies to regulations affecting a publisher's rights to send materials to the prisoners. *Cook*, 238 F.3d at 1149 (citing *Thornburgh*, 490 U.S. at 413, which applied *Turner* to regulations affecting incoming inmate mail regardless of the sender's identity).

But because the parties' briefing did not address the merits of whether there is an as-applied constitutional violation to meet the first prong of the qualified immunity analysis, the Court will assume, without deciding, that there was a constitutional violation for the purposes of the qualified immunity analysis.

b.    *Clearly Established Law*

Defendants argue there was no clearly established law that withholding the publications in question based on sexually explicit material would be an as-applied violation of Prison Legal's First Amendment rights. (Doc. 114 at 8.) Specifically, Defendants contend they were simply implementing in good faith ADC regulations as

instituted by higher authorities.[7]  To determine whether there is clearly established law, courts in the Ninth Circuit look to decisional authority by the Supreme Court or the Ninth Circuit.  *Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004).  Here, Prison Legal has not identified a decisional authority, nor is the Court aware of one, that would have made the contours of the right sufficiently clear that a reasonable official would understand he was violating it when he censored the publications at issue.

While *Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir. 1999) (en banc) does support Prison Legal's assertion that Defendants cannot withhold sexually explicit material including text if it is not reasonably related to legitimate penological interests, it does not constitute clearly established law that would indicate to a reasonable prison official that his decision to censor the publications here is unconstitutional.  Specifically, it does not place beyond debate that a reasonable prison official in as early as 2014 would know that such censorship is unconstitutional under the *Turner* factors (whether the regulation is rationally related, whether there are alternative avenues, the impact on the prison, and whether regulation is an exaggerated response by prison).[8]  Based on the facts alleged in the FAC and the parties' briefing, Defendants are entitled to qualified immunity with regard to the as-applied challenge under the First Amendment.  The Court will dismiss the individual claims for damages against Defendants with regard to the as-applied challenge under the First Amendment.

### C.    Inadequate or Defective Pleading

Defendants' motion also raises a few arguments regarding whether the FAC contains a cognizable legal theory or sufficient facts to support a cognizable legal theory.

---

[7] The Court notes it appears this argument would not apply to all named Defendants since some named Defendants could constitute the "higher authorities" Defendants reference.  But the parties have not focused on this distinction so the Court will not address it either.

[8] Prison Legal also contends the question of whether the challenged policies are rationally justifiable by reference to a legitimate penological interest also comes down to a factual question.  (Doc. 120 at 7.)  However, clear established law is an inquiry based on the reasonable prison official so it is unclear what kind of factual dispute Prison Legal seeks to create.

1   First,  Defendants argue Ryan, Rittenhouse, Hood, and Riggs should be dismissed

2   because Prison Legal has failed to allege sufficient facts about their involvement with

3   withholding PLN's publications.[9]  (Doc. 114 at 12.)  Since the Court will dismiss the as-

4   applied First Amendment claim against Defendants in their individual capacities, only the

5   official capacity claims against Ryan, Rittenhouse, Hood, and Riggs remain.[10]

6   The FAC does allege the job description for Ryan, Rittenhouse, Hood, and Riggs,

7   and it also alleges Defendants promulgated and implemented these policies.  (Doc. 83 at

8   5.)  However, the FAC does not provide sufficient facts to establish the conduct of each

9   Defendant.   To the extent that Prison Legal believes some of these defendants only

10  served as a supervisor, the FAC does not allege sufficient facts about what the defendant

11  knew, how the defendant directed others, or how the defendant promulgated or

12  implemented a policy.  Thus, the Court will grant Defendants' motion to dismiss Ryan,

13  Rittenhouse, Hood, and Riggs in their official capacity for the as-applied challenge

14  brought under the First Amendment.  And the Court will grant Prison Legal leave to

15  amend its First Amendment claim.

16  Second, Defendants argue the as-applied Fourteenth Amendment claim for notice

17  and opportunity lacks a cognizable legal theory because Prison Legal was ultimately

18  aware the publications were excluded and were successful in contesting the withholding.

19  (Doc. 114 at 15.)  Defendants' argument is based on the fact that Prison Legal heard from

20  its subscribers certain publications were censored and that Prison Legal's continuing

21  efforts to investigate and rally led to ADC ultimately releasing many of the censored

22  publications.  However, this argument is unpersuasive.  Just because Prison Legal was

23  able to eventually obtain information through long drawn out efforts does not mean there

24  _____

25  [9] It is unclear exactly from which claims Defendants hope to dismiss Ryan,
26  Rittenhouse, Hood, and Riggs.  Because Defendants' characterized it as a lack of
    involvement in "withholding PLN's publications" (Doc. 114 at 12) and because it related
27  this argument to the earlier discussion of qualified immunity, the Court construes this as
    an argument that the official capacity claims against Ryan, Rittenhouse, Hood, and Riggs
28  for the as-applied First Amendment claim should be dismissed.

    [10] Prison Legal did not allege an official capacity claim against Olsen.

- 14 -

was no constitutional violation.  Thus, the Court rejects this argument.

Third, Defendants argue the Court should grant judgment on the pleadings with regard to the constitutional claims against the new policy because there are insufficient factual allegations with regard to the new policy.  (Doc. 114 at 19-21.)  The Court does not construe these allegations about the 2016 Revised Policy as allegations meant to establish independent constitutional claims, but rather allegations about continuing harm within the framework of Prison Legal's existing constitutional claims.  Thus, the Court will not dismiss claims based on this argument.[11]

Fourth, Defendants also argue the FAC lacks a cognizable legal theory with regard to the facial Fourteenth Amendment challenge of the 2016 Revised Policy and thus should be dismissed.  (Doc. 114 at 21.)  Since the facial Fourteenth Amendment claim is moot, the Court need not address this.

**IT IS ORDERED** Defendants' motion for judgment on the pleadings (Doc. 114) is **GRANTED in part** and **DENIED in part**.  The facial claim under the Fourteenth Amendment is **DISMISSED AS MOOT**.  With regard to the as-applied challenge under the First Amendment, the individual claims for damages against all Defendants and the official capacity claims against Ryan, Rittenhouse, Hood, and Riggs are **DISMISSED**.  Prison Legal is **GRANTED** limited leave to amend its First Amendment claim.  If Prison Legal chooses to amend to conform to evidence discovered thus far, it shall have until no later than Friday, October 13, 2017 to file a Second Amended Complaint.  The remaining arguments in Defendants' motion are **DENIED.**

Dated this 29th day of September, 2017.

Honorable Roslyn O. Silver
Senior United States District Judge

---

[11] To the extent they are entirely different claims, the parties should clarify and consider amending accordingly.