WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Prison Legal News,

    Plaintiff,

v.

Charles L Ryan, et al.,

    Defendants.

No. CV-15-02245-PHX-ROS

**ORDER**

Plaintiff Prison Legal News ("PLN") sued Defendants, current and former officers of the Arizona Department of Corrections ("ADC"), pursuant to 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments. PLN alleges that under ADC's policy prohibiting sexually explicit content, Defendants excluded certain publications sent by PLN to ADC inmates. The Court granted summary judgment to PLN with regard to the facial challenge of ADC's currently operative policy, as-applied challenges to ADC's exclusion of specific publications, and the individual liability of Defendant Charles L. Ryan. (Doc. 260.) Defendants then moved for reconsideration of the Court's summary judgment order ("Order"). (Doc. 272.) For the following reasons, Defendants' motion for reconsideration is denied.

## BACKGROUND

Because the facts are familiar to the parties, the Court restates them only as necessary to explain its decision.

Plaintiff Prison Legal News publishes books and magazines about the criminal justice system and issues impacting prisoners, including *Prison Legal News*—a monthly journal of corrections news and analysis—and the book *The Celling of America: An Inside Look at the U.S. Prison Industry* ("*Celling*"). (Doc. 236 at 3.) *Prison Legal News* has been distributed to prisoners in over 3,000 correctional facilities in the nation, including prisons within the correctional systems of the Arizona Department of Corrections. (Doc. 236 at 3.) There are over 100 subscribers to *Prison Legal News* at ADC facilities. (Doc. 236 at 4.) Defendants are current and former officers and employees of ADC, sued in their official and individual capacities, including ADC's Director Charles L. Ryan ("Ryan").

ADC has a publication review policy, under which officers review publications sent to inmates and prohibit certain materials from entering the prisons. The currently operative Department Order ("DO") 914.07 prohibits "unauthorized content," including "sexually explicit" material. The regulations provide in relevant part:

- 914.07–1.1: "In order to assist with rehabilitation and treatment objectives, reduce sexual harassment and prevent a hostile environment for inmates, staff and volunteers, inmates are not permitted to send, receive or possess sexually explicit material or content that is detrimental to the safe, secure, and orderly operation of the facility as set forth in this Department Order." (Doc. 234-2 at 62.)

- 914.07–1.2.2: "Prohibited publications include, but are not limited to . . . Publications that depict any of the following acts and behaviors in either visual, audio, or written form: Physical contact by another person with a person's unclothed genitals, pubic area, buttocks or, if such person is a female breast; Sadomasochistic abuse; Sexual intercourse, vaginal or anal, fellatio, cunnilingus, bestiality or sodomy; Masturbation, excretory functions, and lewd exhibition of the genitals; Incestuous sexual activity; Sexual activity involving an unwilling participant, or a participant who is the subject of coercion, or any sexual activity involving children." (Doc. 234-2 at 62.)

- 914.07–1.2.17 prohibits: "Content in publications, photographs, drawings, or in any type of image or text, that may, could reasonably be anticipated to, could reasonably result in, is or appears to be intended to cause or encourage sexual excitement or arousal or hostile behaviors, or that depicts sexually suggestive settings, poses or attire, and/or depicts sexual representations of inmates, correctional personnel, law

enforcement, military, medical/mental health staff, programming staff, teachers or clergy." (Doc. 234-2 at 63.)

- "Sexually explicit material" is defined as: "Any publication . . . which pictorially or textually depicts nudity of either gender, or homosexual, heterosexual, or auto-erotic sex acts including fellatio, cunnilingus, masturbation, sadism, sado-masochism, bondage, bestiality, excretory functions, sexual activity involving children, an unwilling participant, or the participant who is the subject of coercion." (Doc. 234-2 at 69.)

In addition to the prohibited content listed above, the policy contains several exceptions:

- 914.07–1.19: "Publications that contain nudity and/or descriptions of sexual behaviors/acts, or violent acts, shall not be withheld if such unauthorized content is within a publication commonly considered to constitute a well-known and widely recognized religious work (such as the Bible, the Koran, the Book of Mormon) or literary work (such as Shakespeare). (Doc. 234-2 at 61–62.)

- 914.07–1.18: "A legal publication that contains unauthorized content that is either (a) directly quoted from a trial or appellate court's decision, opinion, or order, or (b) otherwise taken from a court case, government publication, or news wire service (such as the Associated Press), shall not be withheld if the unauthorized content is reasonably necessary to understand the fundamental legal issue or legal principle of the legal publication. (Doc. 234-2 at 61.)

Pursuant to ADC's policy prohibiting sexually explicit material, certain publications by PLN, including issues of *Prison Legal News* and *Celling*, have been excluded and/or redacted. Some of these publications were excluded without notice to PLN. PLN brought claims against Defendants under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments. In May 2018, the parties cross-moved for summary judgment. (Docs. 233, 235.) The Court granted summary judgment to PLN with regard to the facial challenge to ADC's operative policy, as-applied challenges to ADC's exclusion of certain issues of *Prison Legal News*, and the individual liability of Defendants Ryan and Olson. (Doc. 260.) In addition, the Court partially denied summary judgment to Defendants with regard to damages, concluding that PLN is allowed to seek compensatory damages for frustration of mission. (Doc. 260 at 13–14.) Defendants moved for reconsideration of the Court's summary judgment order pursuant to Local Civil Rule 7.2(g). (Doc. 272.)

## LEGAL STANDARD

"Motions for reconsideration are disfavored and should be granted only in rare circumstances." *United States v. Vistoso Partners, LLC*, No. CV10-0444, 2011 WL 2550387, at *1 (D. Ariz. June 27, 2011).

Local Civil Rule 7.2(g) provides: "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." In a motion to reconsider, the movant must "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court." L.R.Civ. 7.2(g). Further, "[n]o motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." L.R.Civ. 7.2(g).

## ANALYSIS

First, Defendants argue the Court erred in concluding that ADC's policy is facially unconstitutional because ADC's policy is "indistinguishable" from the one approved by the Supreme Court in *Thornburgh v. Abbott*, 490 U.S. 401 (1989). (Doc. 272 at 1.) This argument is incorrect. In *Thornburgh*, the regulations in question gave the warden discretion to reject "sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity." *Thornburgh*, 490 U.S. at 405 n.5. The warden, however, could not "reject a publication 'solely because its content is . . . sexual.'" *Id.* at 405. In addition, the Court found it significant that the "warden may designate staff to screen and, where appropriate, to approve incoming publications, but only the warden may reject a publication." *Id.* at 406. The Court wrote it was "comforted by the individualized nature of the determinations required by the regulations," under which "no publication may be excluded unless the warden himself makes the determination that it is 'detrimental to the security, good order, or discipline of the institution or . . . might facilitate criminal activity.'" *Id.* at 417.

By contrast, ADC's regulations specifically reject "sexually explicit material *or*

content that is detrimental to the safe, secure, and orderly operation of the facility." (Doc. 234-2 at 38 (emphasis added).) There is no additional requirement that once a publication is determined to be sexually explicit, it must also be determined to be detrimental to safety and security. Defendants argue the Court misunderstood the language of the policy and ADC's regulations reject sexually explicit material or content only when it is also detrimental to safety and security. (Doc. 272 at 2–3.) However, Defendants' interpretation is not plausible in the context of DO 914.07, which is titled "Unauthorized Content." (Doc. 234-2 at 38.) Within DO 914.07, Section 1.1 contains the language prohibiting sexually explicit material or content that is detrimental to safety and security. (Doc. 234-2 at 38.) Section 1.2 then lists examples of "prohibited publications," including sex-related material as well as material that has nothing to do with sex, such as depictions that incite riots or work stoppages, depictions of street gangs, and instructions on bomb making. (Doc. 234-2 at 38.) As such, DO 914.07 prohibits both sexually explicit content and publications deemed to be detrimental to safety and security; it does not require an additional finding that sexually explicit content is also detrimental to safety and security.

In any event, ADC's regulations are distinguishable from the regulations in *Thornburgh* in other material ways. As described above, the *Thornburgh* Court found it significant that the prison regulations required the warden to personally make all exclusion decisions. *Thornburgh*, 490 U.S. at 417. ADC's regulations, on the other hand, allow publications officers to exclude material. Defendants assert that "[w]ithout any logic or evidence whatsoever, [PLN] condescendingly argues that the wardens in *Thornburgh* are better at doing publication review than ADC's publications officers." (Doc. 286 at 4.) Defendants miss the point. The *Thornburgh* Court explicitly stated it was "comforted" by the "nondelegability of power to reject publications" because it would preclude "needless exclusions." *Thornburgh*, 490 U.S. 401 at 417. ADC's regulations have no such provision and have, indeed, been used to make needless exclusions.

Second, Defendants argue the Court erred by conducting an overbreadth analysis separate from *Turner*'s four-part test, citing the Ninth Circuit's instruction that "[t]he

1  *Turner* analysis applies equally to facial and 'as applied' challenges." (Doc. 272 at 8 (citing *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004)).) This argument is inaccurate. In deciding that ADC's policy is facially unconstitutional, the Court relied on the first factor of the *Turner* test: whether there is a rational connection between the regulation and ADC's asserted goal. The Court concluded: "ADC's policy prohibiting sexually explicit material is not rationally related to its stated goals of rehabilitation, reduction of sexual harassment, and prison security." (Doc. 260 at 18.) There is no rational connection, the Court explained, in part because ADC's policy is so broad that it prohibits "all sexually related material," as well as "content that *may* cause or encourage sexual arousal." (Doc. 260 at 18–19.) As such, "[n]o reasonable trier of fact would conclude that such broad censorship is rationally related to furthering ADC's penological interests," and ADC's policy failed the first factor of the *Turner* test. (Doc. 260 at 19.) That the Court considered the sheer breadth of the policy to determine the lack of a rational connection does not mean it conducted an additional overbreadth analysis separate from the *Turner* test.

Third, Defendants argue the Court erred because it considered undisputed examples of prohibited publications under ADC's policy, such as "articles about the persecution of the Yazidi people by ISIS, articles about the Me Too movement, Maya Angelou's *I Know Why the Caged Bird Sings*, a *New Yorker* book review of a scholarly biography of Sigmund Freud, a Mayo Clinic newsletter that contained a medical illustration of a hernia, and self-portraits by former President George W. Bush." (Doc. 260 at 19.) According to Defendants, the Court should have limited its analysis to the plain language of the regulation. (Doc. 272 at 9.) Yet Defendants also argue "there is no evidence whatsoever that a substantial number of [the ADC policy's] applications are unconstitutional." (Doc. 272 at 11.) The Supreme Court has instructed that a law may be facially invalidated if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted). Here, the Court correctly considered undisputed evidence and determined that under ADC's policy, a substantial number of its applications are unconstitutional.

Fourth, Defendants seek clarification regarding the Court's statement that it "makes no conclusions about language redacted pursuant to provisions of DO 914.07 that are unrelated to sex." (Doc. 260 at 22.) As noted above, DO 914.07 prohibits "unauthorized content" that includes sex-related content, as well as publications that are unrelated to sex. The parties' summary judgment briefing concerned only sex-related exclusions, and the Court made no determinations about the legitimacy of exclusions based on reasons that are unrelated to sex. Therefore, to the extent that ADC's exclusions are based on provisions that do not relate to sex, or are based on multiple provisions including those that are not related to sex, Defendants need not un-redact the passages that were redacted for those non-sex-related reasons.

Fifth, Defendants argue that no claims remain regarding the exclusion of *Celling*, because they moved for summary judgment on the basis that any claim was barred by the statute of limitations. (Doc. 272 at 16.) However, Defendants raised the statute of limitations argument only with regard to Defendant Hood's exclusion of *Celling* in 2012. (Doc. 233 at 13.) Defendants did not move for summary judgment on any claim based on the 2015 exclusion of *Celling*, and summary judgment was therefore not granted to Defendants with regard to all claims based on the exclusion of *Celling*.

Finally, the Court rejects Defendants' various arguments that repeat previous briefing, pursuant to L.R.Civ. 7.2(g)'s instruction that "[n]o motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." Because Defendants impermissibly repeat their arguments regarding the *Turner* analyses of PLN's facial and as-applied challenges, Defendant Ryan's individual liability, and PLN's damages disclosures, the Court will not reconsider its Order on those grounds.

Accordingly,

**IT IS ORDERED** Defendants' Motion for Reconsideration, (Doc. 272), is **DENIED**.

**IT IS ORDERED** no later than September 11, 2019, the parties shall file a joint statement regarding the status of this case.

Dated this 4th day of September, 2019.

_____
Honorable Roslyn O. Silver
Senior United States District Judge