**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prison Legal News, | No. CV-15-02245-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 365, "Mot.") seeking over $2,500,000 in fees and expenses spanning the more than eight-year life of this case pursuant 42 U.S.C. § 1988.  The Court will grant in part and deny in part Plaintiff's motion and award $2,370,881.67 in attorneys' fees and expenses and $8,426.25 in costs.

## BACKGROUND

Plaintiff Prison Legal News filed this suit challenging Arizona Department of Corrections Order 914, under which the Defendants could prohibit inmates receiving mail containing "sexually explicit material."  (Doc. 1).  The Court granted partial summary judgment for Plaintiff, (Doc. 260), and entered a permanent injunction requiring Defendants to amend their order and permit distribution of the censored issues, (Doc. 305). The Ninth Circuit concluded certain language in Defendants' policy was unconstitutional and affirmed Plaintiff's victory on one as-applied challenge and remanded another of Plaintiff's as-applied challenges but otherwise reversed in part and remanded for further

proceedings.   (Doc. 341-1).   Defendants then revised Order 914 and distributed two editions of Plaintiff's publication, (Doc. 343), and the Court entered judgment in favor of Defendants after the Court concluded there was nothing left to adjudicate, (Docs. 362 and 363).   But the Court noted entering judgment in favor of Defendants "should not be construed as any ruling regarding Plaintiff's success for purposes of an application for attorneys' fees." (Doc. 362).

Plaintiff then filed a Motion for Attorneys' Fees and Expenses (Doc. 365) requesting $2,255,497.65 in fees for merits work and $250,037.55 for work on the fees petition itself. Defendants argue this amount is excessive and requests the Court reduce the award by 70% to account for Plaintiff's "limited success obtained" and further reduce the award by $657,423.00 for specific challenged billing entries.   (Doc. 376, "Resp." at 30).

## FEES MOTION AND LODESTAR CALCULATION

Courts "employ the 'lodestar' method to determine a reasonable attorney's fees award."  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (citing *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).   Courts calculate "the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Id.* The Court has "considerable discretion" in determining the reasonableness of attorney's fees.  *Webb v. Ada County Idaho*, 195 F.3d 524, 527 (9th Cir. 1999).   After calculating the lodestar amount, a Court may reduce or multiply the award based on a variety of factors.   Those factors include: (1) the time and labor required, (2) the novelty and difficulty of the legal questions involved, (3) the skill required to perform the legal service properly, (4) other employment precluded due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) ("*Kerr*

- 2 -

factors").[1]  Some of these factors are normally subsumed in the lodestar calculation such that they need not be considered again after the lodestar is determined.  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013) (identifying factors often considered when calculating lodestar).

### A.    Hourly Rates

The first question is whether Plaintiff's asserted rate is reasonable.  "A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community."  *Sw. Fair Hous. Council v. WG Scottsdale LLC*, No. 19-00180, 2022 WL 16715613 at *3 (D. Ariz. Nov. 4, 2022) (citing *Kelly*, 822 F.3d at 1099).  And "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiff correctly asserts courts may apply current market rates in calculating the lodestar to account for the delay in payment over the eight-year lifespan of this case.  Mot. at 8; *see also Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) ("[A]n appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute.").  Defendants argue Plaintiff cannot claim its historical rates would be unreasonable because they "far exceed[] Phoenix market rates."  Resp. at 22.  But whether Plaintiff's claimed rates exceed Phoenix market rates is inapplicable to determining an adjustment to historical rates to account for delay.  The Court finds an adjustment to 2023 market rates appropriate.

Plaintiff also asserts San Francisco rates should apply instead of Arizona rates because Plaintiff "was unable to secure a law firm in Arizona willing or able to take on the lead counsel role for this case," as the Ninth Circuit Commissioner found for Plaintiff's appellate fee award.  Mot. at 8–9 (citing Case. No. 19-17449, Doc. 78 at 3–4).  Plaintiff

---

[1] Local Rule 54.2 also lists factors the Court must address when determining the reasonableness of the requested award.  These factors are largely duplicative of the *Kerr* factors.

argues the Ninth Circuit's finding constitutes the "law of the case" and is binding on this Court in this subsequent proceeding. *Id.* at 8. Defendants argue Ballard Spahr and Perkins Coie are "well equipped to litigate high-stakes civil rights cases." Resp. at 22. And though Defendants acknowledge those firms could not "sign on as lead counsel for this particular case," they argue "this does not warrant the State and its taxpayers being required to pay" San Francisco rates. *Id.* Defendants further argue the Ninth Circuit's findings in its fee award are limited to the appellate context and do not apply here. *Id.* at 21–22. While the Ninth's Circuit's finding San Francisco rates apply might not be the "law of the case" as Plaintiff suggests, it is certainly persuasive where Plaintiff asserts and Defendants do not meaningfully challenge that no Arizona firms were able to serve as lead counsel in this case. The Court finds San Francisco rates are appropriate in calculating the lodestar.

In further support of its argument its claimed fees are reasonable, Plaintiff states the lawyers at Rosen Bien Galvan & Grunfeld LLP ("RBGG") have a longstanding relationship with Plaintiff and have "unquestionable expertise in prison and First Amendment law and cases, including cases specifically addressing First Amendment access to prisons." Defendants do not respond specifically to these assertions.

The Court finds that RBGG's 2023 San Francisco rates apply, and the experience, reputation, and ability of Plaintiff's counsel generally support the hourly fees requested in this case. Accordingly, the Court finds Plaintiff's rate schedule above is reasonable.

### B. Hours Expended

Under the lodestar method, the prevailing party may recover fees for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 486 (D. Ariz. 2019) (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)). Courts may "exclude from this initial fee calculation hours that were not reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983) (internal quotations removed); *see also McKown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) ("In determining the appropriate number of

1    hours to be included in a lodestar calculation, the district court should exclude hours that

2    are excessive, redundant, or otherwise unnecessary.").

3                     **i.    Limited Success**

4          Defendants argue Plaintiff should not recover its requested fees because it achieved

5    only limited success.  Resp. at 9–12.  The "extent of a plaintiff's success is a crucial factor

6    in determining the proper amount of an award of attorney's fees."  *Hensley v. Eckerhart*,

7    461 U.S. 424, 440 (1983).  Where a plaintiff achieves only limited success, courts should

8    award only fees reasonably related to the results achieved.  *See id.* at 435 ("The

9    congressional intent to limit awards to prevailing parties requires that these unrelated

10   claims be treated as if they had been raised in separate lawsuits, and therefore no fee may

11   be awarded for services on the unsuccessful claim.").  In some cases, distinguishing

12   between work expended on different claims is relatively straightforward.  This is not one

13   of those cases.  This case involves "a common core of facts" and it is "difficult to divide

14   the hours expended on a claim-by-claim basis."  *Id.*  In such cases, "the district court should

15   focus on the significance of the overall relief obtained by the plaintiff in relation to the

16   hours reasonably expended on the litigation."  *Id.*

17         Defendants argue Plaintiff's limited success in this case justifies a 70% across-the-

18   board reduction to Plaintiff's requested fees.  Resp. at 12.  Defendants' Response asserts

19   "Plaintiff ultimately lost the main impetus behind the lawsuit: its claim that Defendants'

20   publication policy was unconstitutional on its face and must be revamped."  *Id.*  But this

21   ignores that Plaintiff achieved many of its litigation goals by prevailing on one of its two

22   facial First Amendment challenges and two of its four as-applied challenges, that

23   Defendants permanently revised its policy, that Defendants uncensored five issues of its

24   magazine, and paid Plaintiff $10,000 in damages.  (*See* Doc. 377, "Reply" at 4–5).

25         Plaintiff applied a 10% across-the-board reduction to its requested fees to account

26   for any limitations on its success on top of significant discrete reductions to "remove time

27   clearly identifiable as devoted to issues on which it did not prevail."  Reply at 5; *see also*

28   Mot. at 2, 12.  The Court finds these reductions, taken together, adequately account for

Plaintiff's limited—but still substantial—success in this matter.

### ii. Vague and Ambiguous Billing Entries

Defendants ask the Court to reduce Plaintiff's fee request by at least $54,399.00 to account for vague and ambiguous billing entries. Resp. at 13. A party requesting fees must "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. Local Rule 54(e)(2) permits the Court to reduce fee awards where time entries "fail to adequately describe the service rendered." The Local Rules require parties seeking fees to "adequately describe the service rendered" by, for example, identifying participants and the reason for telephone conferences, identify specific legal issues and (if applicable) the relevant pleading or document for legal research, and identifying the activities associated with preparation of pleading and other papers. *Id.*

Defendants argue a sampling of Plaintiff's billing entries "lack sufficient specificity to determine what the attorney was actually working on," and are "untethered to any described factual issues or even the First or Fourteenth Amendment claims alleged in the case." Resp. at 13. Plaintiff's Reply asserts its billing records "are not vague, especially when viewed in context with surrounding entries, and include the level of detail that [Plaintiff's] attorneys provide to clients when engaging in fee for services work." Reply at 9.

The Court has reviewed the billing entries Defendants identified as vague, *see* Resp. Ex. 6, and Plaintiff's annotated version of Defendants' table, *see* Reply Ex. C. These billing entries provide the necessary information to determine the time worked is reasonable and appropriate. While many of these entries include general statements about the content of the work, the context of the entries provides sufficient detail. These are far from the bare entries the Local Rules contemplate as insufficient. Entries related to correspondence identify all participants and the subject matter of the correspondence and entries related to legal research identify the specific legal issues researched. *See generally* Resp. Ex. 6, Reply Ex. C. The Court finds reducing the fees award due to the billing

entries' purported vagueness or ambiguity is not appropriate.

### iii.   Block Billing

Defendants assert they identified $167,090.00 in billing entries constituting inappropriate block billing and ask the Court to reduce this amount by at least 50% to 70%. Resp. at 14–15.  Courts reducing a fees award based on improper block billing may not apply an across-the-board reduction to the total fee request but may apply a percentage reduction to block-billed hours.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

Plaintiff argues block billing "refers to a single time entry for an entire days' tasks." Reply at 8.  While this is the definition the Ninth Circuit put forth in *Welch*, *see* 480 F.3d at 945 n.2*,* this is a particularly narrow view of block billing.  Courts within the Ninth Circuit have applied a broader definition of block billing encompassing entries that contain multiple discrete and unrelated tasks preventing courts from distinguishing between the time claimed for the various tasks.  *See, e.g.*, *Moshir v. Automobili Lamborghini Am. LLC*, 927 F. Supp. 2d 789, 799 (D. Ariz. 2013); *Deocampo v. Potts*, 2014 WL 788429, at *5 (E.D. Cal. Feb. 25, 2014).

The Court has reviewed the table of purported block-billed entries Defendants compiled and Plaintiff's annotated version of this table providing context for the challenged entries.  *See* Resp. Ex. 4, Reply Ex. B.  Many of the challenged entries involve entries of less than one hour and in some cases as low as 0.3 hours.  *See id.*  Others involve plainly related tasks with reasonable time spent—e.g. "Revise & file stipulated EOT and PO; email opposing regarding same" for 1.1 hours; "Emails with AS re prep for call with HRDC re various strategy issues, conduct call, and follow up conf with AS re next steps" for 1.0 hour.  Reply Ex. B at 6.  While they include discrete tasks, these entries are not the sort of block billing courts are concerned about.

But there are some entries in the sampling Defendants compiled that constitute improper block billing.  For example, one entry for 6.0 hours includes "[d]oc review, and M&C, emails with Gottfried and LAE."  Reply Ex. B at 5.  While, as Plaintiff's suggest,

these tasks may well have been related to the same topic, they are sufficiently distinct that the Court cannot properly assess the reasonableness of the time spent on each task, particularly when the total time spent comprises six hours.  If, say, this attorney spent five hours of this billing entry on emails, while spending only one hour between document review and a meet and confer, the time spent on emails would be unreasonable.  But the combined nature of this billing entry does not allow the Court to make such a determination.  Such entries are not common in Defendants' compilation, but they are present and constitute improper block billing.

Defendants ask the Court to apply a reduction of at least 50% and up to 70% to Plaintiff's block-billed time entries.  Resp. at 15.  The Court is unsure how Defendants arrived at these figures.  Defendants fail to cite any cases involving such a staggering reduction figure, nor do the facts support it.  Instead, the cases they cite involved reductions of no more than 30% to block-billed hours.  *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (upholding 30% reduction); *Deocampo v. Potts*, 2014 WL 788429 at *5 (applying 20% reduction).

Because most of the entries in Defendants' compilation of purported block billing are permissible, the Court will apply a 10% reduction to the $167,090.00 of billing entries Defendants challenge to account for impermissible block billing, yielding a reduction of **$16,709.00**.

### iv.    Excessive or Duplicative Billing

Defendants assert Plaintiff's fee requests for preparing the complaint, responding to Defendants' motion for summary judgement, and preparing the reply for Plaintiff's motion for summary judgment are excessive and the Court should deny them.  District courts may reduce requested hours that are excessive or duplicative.  *See Vargas v. Howell*, 949 F.3d 1188, 1199 (9th Cir. 2020).

Defendants claim Plaintiff's billing entries of $28,322.50 for preparing the complaint and $115,630.00 to draft Plaintiff's motion for summary judgment are excessive.  Resp. at 16.  Defendants also assert RBGG's billing $95,975.00 to respond to Defendants'

motion for summary judgment and $42,410.00 for Plaintiff's reply regarding its own motion for summary judgment should preclude an award for "fees billed by HRDC and Ballard Spahr for arguable duplicative work." *Id.*

Plaintiff argues the "complaint was carefully tailored to the facts" and involved consultations with an expert on correctional mail policies and practices, and that the summary judgment motion "involved complicated issues of law and fact, extensive oversize briefs, a record spanning thousands of pages, and later, multiple related motions to strike and evidentiary objections." Reply at 8. Plaintiff also notes Defendants did not propose a reduction amount. *Id.* While this is true, it does not preclude the Court from reducing these fees based on independent evaluation.

The Court finds Plaintiff's billing related to preparing the complaint and Plaintiff's motion for summary judgment to be excessive. While the Court acknowledges that drafting these documents likely involved significant factual and legal work, this work builds on itself. Taken together, $143,952.50 for preparing these filings is too high. The Court will apply a 20% reduction to these entries, yielding a reduction of **$28,790.50**.

While the Court may have found that billing entries by HRDC and Ballard Spahr related to the response and reply to the cross-motions for summary judgment would be excessive and duplicative given the fees RBGG billed for this work, Defendants do not identify the amount of those fees charged by the other firms nor argue that RBGG's billing was excessive in itself. Thus, the Court will not reduce the fees requested for this work.

### v.   Clerical Tasks

Defendants assert they have identified $29,776.00 in billing entries for clerical tasks. Resp. at 17–21. In assessing a fees motion, courts may reduce the award for time spent performing clerical work. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993).

Plaintiff's Reply argues many of the challenge time entries "describe substantive

legal work done by attorneys, including finalizing pleadings and other litigation documents," substantive conferences and emails, and legal research. Reply at 6.

The Court has reviewed Defendants' table of time entries comprising purportedly clerical work. *See* Resp. Ex. 2. Most of these entries reflect purely clerical tasks, e.g. 1.5 hours for "[e]lectronically filing documents" and 0.3 hours to "[c]alendar deadline per court order." *Id.* at 6, 12. But, as Plaintiff suggests, some of these entries involve substantive legal work, e.g. 1.6 hours to "[r]evise, finalize, and file joint motion for extension of case management deadline and associated proposed orders." *Id.* at 5.

While Defendants request the Court to eliminate entries for clerical work—a position which has some support in the caselaw, *see Topness v. Cascadia Behav. Healthcare*, No. 16-CV-2026, 2017 WL 8895626, at *6 (D. Or. Oct. 17, 2017)—this work is not necessarily unrecoverable but may not be recoverable at the high billing rate of an attorney or even a paralegal, *see Missouri v. Jenkins*, 491 U.S. at 288 n.10 ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate . . . . Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.") (internal quotations omitted).

To properly account for clerical work, but acknowledging some of the identified entries include substantive legal work or clerical work recoverable at a lower rate, the Court will reduce the purportedly clerical hours identified by Defendants by 70%, yielding a reduction of **$20,843.20**.

### vi.   Work Unrelated to the Merits

Defendants assert they have identified $74,052.00 in billing entries reflecting work appearing unrelated to this litigation and $49,760.50 in entries reflecting internal communications that "cannot be connected to any claims for which Plaintiff ultimately received relief and furthermore constitute unreasonably duplicative interoffice communication." Resp. at 20–21. A party seeking fees must make "a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Defendants take issue with $74,052.00 in billing entries including (i) "unspecified communications with the press or about communicating with the press;" (ii) research on "potential copyright claims and conferencing with the ACLU regarding PLN materials;" (iii) internal communications about "unspecified inmate communications or inmate subscriber communications;" (iv) communications about "related cases," including *Parsons v. Ryan*, *Amtel*, and *Romero*; and (v) "activities related to building a database of inmate subscribers to assess subscriber numbers," providing "litigation updates" to inmates, sending out "unspecified mass mailing to inmate subscribers," apparently recruiting "inmate subscribership," and performing "inmate custody checks." Resp. at 20 (internal quotations omitted).

Defendants also challenge regular billing "for what appear to be internal emails or conferences regarding local counsel, or unspecified strategy, or next steps, status, logistics, case management, upcoming projects, staffing, or division of labor," identifying entries totaling $49,760.50. Resp at 20–21 (internal quotations omitted).

Plaintiff correctly asserts the purportedly "unrelated cases" are seminal related cases, including one later cited in the Ninth Circuit's decision in this matter. Reply at 7. Plaintiff then argues time spent communicating with incarcerated subscribers about censorship was related to the merits—HRDC relied on these communications to learn if Defendants were delivering publications and ultimately amended its complaint to add new claims based on information obtained through this outreach. *Id.* Seemingly responding to Defendants' claims regarding entries related to a potential copyright claim, Plaintiff argues Defendants acknowledge "development of theories of the case and drafting initial pleadings is generally compensable." Finally, Plaintiff argues press coverage can be integral to identify witnesses and evidence and to advance investigations. *Id.* (citing *Davis*, 976 F.2d at 1545 ("Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the same.")).

While the Court agrees that much of the research on related cases is sufficiently related to the merits of the case, Defendants otherwise present valid arguments for reductions to the fees request.  While communications with inmates may have implications for the merits of the case, the legal relevance would be with the database or information gathered from the communications—not the time spent on the communications themselves.  And while Plaintiff is correct that development of case theories is compensable, development of a copyright theory that Plaintiff did not bring, let alone successfully pursue, is not compensable.  Further, Plaintiff has not articulated how press and media relations are so "directly and intimately related to the successful representation" in this case to justify recovering fees for such time.  Finally, most of the $49,760.50 in billing entries for internal communications that Defendants challenge largely appear not sufficiently related to the merits and instead reflect time spent on administrative tasks.

Thus, the Court will apply a 70% reduction to both the entries totaling $74,052.00 and the entries totaling $49,760.50 to account for work not reasonably connected to the merits of a claim for which Plaintiff ultimately received relief, yielding a reduction of **$86,668.75**.

### vii.    Fees Application

Finally, Defendants further argue Plaintiff's requested $301,017.15 in fees for preparing the present fees application are unreasonable and excessive.  Resp. at 28–30.  Defendants ask the Court to reduce these fees by 70%.  *Id.* at 29–30.  It is "well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir.1996)).

Defendants' argument focuses on comparing Plaintiff's request to the fees Plaintiff sought for the entirety of the appellate process.  Resp. at 29.  Plaintiff sought $278,487.50 for its appellate work (including merits and fee application work) and the Ninth Circuit ultimately awarded $208,865.62.  *Id.*  But this comparison is inapposite.  As Plaintiff points out, the appellate process spanned two years and involved only one substantive brief.

Reply at 10–11.  The present fees application encompasses work spanning more than eight years of extensive litigation and includes the work of three law firms.  *Id*.

Defendants' remaining argument for reducing the fees award for time spent preparing the fees application is an undeveloped and unsupported assertion that "Plaintiff's billing for preparation of the fees application suffers from the same fatal flaws as does the request for fees for merits work"—the entries are "similarly vague and ambiguous, excessive, duplicative, and contain billing for clerical work," and "should be reduced in proportion to the limited success achieved in this case."  Resp. at 29–30.  Plaintiff responds detailing the work that went into preparing the fees application and the $38,501.05 in discrete reductions, HRDC and Ballard Spahr not claiming fees for work after May 26, 2023, a 10% across-the-board reduction of fees work time, a 20% reduction of fees from June 24 to August 29, 2023, and a waiver of fees related to work to complete and file the Reply estimated to be at least $20,000.  Reply at 11.

The Court finds these reductions sufficient.  As Defendants will know from reviewing the fees application and its supporting documents, preparing these papers required painstaking review of nearly a decade of billing entries across multiple firms.  The Court will not reduce the requested fees award for preparing the fees application.

### viii.    Expenses and Costs

Defendants take issue with Plaintiff's requested reimbursement for $18,378.80 in costs.  Resp. at 24.  Defendants argue (i) the Court should deny these costs because they do not comply with Local Rule 54.2(e)(3); (ii) costs of three deposition transcripts are duplicative; (iii) costs for legal research are not recoverable or were not reasonably incurred; and (iv) costs for postage, long-distance telephone calls, courier fees, photocopying, and travel were not established as reasonably incurred.  *Id.* at 24–28.

Local Rule 54.2(e)(3) provides a party seeking costs must "identify each related non-taxable expense with particularity," attaching "copies of applicable invoices, receipts and/or disbursement instruments."  Defendants argue Plaintiff failed to comply with this rule by not identifying each non-taxable cost with particularity and did not "itemize or

1   parse any of these costs into categories and identify the total cost incurred per category."

2   Resp. at 24.  Plaintiff responds stating their "expense records are organized and provide

3   the necessary detail" in that they "submitted an itemized statement of all expenses and

4   attached supporting documentation (i.e., receipts) based on the expense category.  Reply at

5   10.  The Court agrees.  Plaintiff attached an itemized statement of all expenses and included

6   applicable supporting documentation.  *See* Mot. Ex. F at 247–266.  Plaintiff's expense

7   request complies with Local Rule 54.2(e)(3), and it is unclear what more Defendants could

8   ask Plaintiff to provide to document these expenses.

9       Defendants claim Plaintiff includes the costs for three deposition transcripts in both

10   its bill of costs (Doc. 366) and its expense request here and are thus duplicative.  Resp. at

11   25.  Plaintiff explains its itemized expense report specifically omits court reporter charges

12   claimed on the bill of costs.  Reply at 10 (citing Doc. 365-1 at 265).  Plaintiff is correct.

13   The Court will not reduce Plaintiff's requested expenses because Plaintiff's request does

14   not seek duplicative recovery of these expenses.

15       Defendants argue legal research expenses are not recoverable, and even if the Court

16   decides they are recoverable, the Court should deny them because Plaintiff's invoices are

17   insufficient to establish the expenses were reasonable and connected to this litigation.

18   Resp. at 25–26.  Defendants cite to decisions from the Seventh Circuit and district courts

19   in California and Oregon to assert legal research expenses are not recoverable.  *Id.*  But

20   this ignores cases from the District of Arizona holding legal research expenses are

21   recoverable costs.  *See, e.g.*, *Agster v. Maricopa Cnty.*, 486 F. Supp. 2d 1005, 1018 (D.

22   Ariz. 2007) (awarding Plaintiff electronic legal research expenses under § 1988).  The

23   Court finds legal research expenses are recoverable.  Further, Plaintiff has complied with

24   Local Rule 54.2(e)(3) in presenting adequately detailed accounts of its legal research

25   expenses.  Legal research expense reports need not identify the legal issues researched.

26   *Agster*, 486 F. Supp. 2d at 1018.  The Court will not reduce or deny Plaintiff's legal

27   research expense request.

28       Finally, Defendants argue the Court should deny costs for postage, long-distance

- 14 -

telephone calls, courier fees, photocopying, and travel because Plaintiff's submitted invoices do not establish the costs were reasonable.  Resp. at 26–28.  Plaintiff asserts its itemized statement of expenses and attached supporting documentation satisfy its burden on this issue.  *See* Reply at 10.  As the Court found above with respect to Plaintiff's fee request generally, its requests for these expenses are sufficient under Local Rule 54(e)(3).  There is one slight exception—Defendants identify an entry for $20.88 for the postage costs of sending "[d]iabetes books" to prisoners.  Resp. at 27, (Doc. 365-4 at 187).  It is unclear how this charge relates to this litigation and the Court will deny it, yielding a total reduction of Plaintiff's non-taxable expenses of **$20.88**.

### ix.    Lodestar Calculation

Accordingly, the Court will reduce the lodestar amount by **$153,032.33** to account for improper block billing, excessive hours, clerical tasks, work not reasonably connected to the merits of a claim for which Plaintiff received relief, and unrecoverable expenses as outlined above.  The Court calculates the lodestar amount to be **$2,370,881.67**.

### C.    Lodestar Adjustment

Despite a "strong assumption that the 'lodestar' method represents a reasonable fee," *Corrales-Gonzalez v. Speed Auto Wholesalers LLC*, 2023 WL 3981139, at *7 (D. Ariz. June 13, 2023), the Court "has discretion to adjust the lodestar upward or downward" based on the *Kerr* factors not subsumed in the lodestar calculation, *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016).  Courts must assess these factors and must articulate "with sufficient clarity the manner in which it makes its determination."  *Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014).  The above lodestar analysis subsumes several of these factors, including the time and labor required by counsel, skill required to perform the legal service properly, customary fees in similar matters, and the experience and reputation of counsel.  Defendants do not challenge any of these lodestar factors aside from their general arguments against the fee award detailed above.  The Court considers the remaining factors here and finds none justify adjusting the lodestar figure.

### i.    Time Limitations

Given the time required to litigate this matter, Plaintiff asserts that on occasion, its lawyers needed to delay other matters.  Mot. at 15.  This factor weighs in favor of awarding the full lodestar amount.

### ii.    Results Obtained

The Supreme Court has instructed the "most critical factor in determining the reasonableness of a fee award 'is the degree of success obtained.'"  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436).  *See also Rudebusch v. Arizona*, No. 95-CV-1313, 2007 WL 2774482, at *5 (D. Ariz. Sept. 21, 2007) (quoting *Hensley*, 461 U.S. at 436).  If a "plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436).

The Court analyzed the results obtained in addressing Defendants' assertion that the Court should reduce Plaintiff's requested fees to account for Plaintiff's limited success. Having found the fees request appropriately accounted for Plaintiff's limited success, the Court weighs this factor in favor of awarding the full amount of the lodestar as calculated.

### iii.    Novelty and Difficulty of the Issues

Plaintiff asserts the "legal and factual issues in this case were complex."  Mot. at 14. The Court agrees and finds this factor weighs in favor of awarding the full lodestar amount.

### iv.    Undesirability of the Case

Plaintiff argues litigation on behalf of non-profit publishers focused on the rights of incarcerated people is "often unattractive to the bar," and that it is unlikely another firm could have served as lead counsel in this case.  Mot. at 16.  Further, Plaintiff argues the contingent fee arrangement involved a considerable assumption of financial burden on the firms' behalf, making it even more undesirable.  The Court finds this factor weighs in favor of awarding the full lodestar amount.

### v.    Nature and Length of Client Relationship

Plaintiff asserts RBGG and its lawyers have extensive experience representing

1  Plaintiff since 2005.  Mot. at 16.  The Court finds this factor weighs in favor of awarding
2  the full lodestar amount.

3            **vi.**     **Awards in Similar Cases**

4        Plaintiff asserts its requested fees award is "consistent with other fee awards in
5  similar litigation," including other cases where courts outside San Francisco and the
6  Northern District of California awarded RBGG its San Francisco rates.  Mot. at 16–17.
7  The Court finds this factor weighs in favor of awarding the full lodestar amount.

8            **vii.**     **Lodestar Reduction**

9        Having considered all the *Kerr* factors, the Court determines no reduction to the
10  lodestar amount is appropriate in this case.

11       **D.**     **Conclusion**

12        Plaintiff requested $2,523,914.00 in fees and expenses.  The Court reduced this
13  amount by $153,032.33 to account for improper block billing, excessive hours, clerical
14  tasks, work not reasonably connected to the merits of a claim for which Plaintiff received
15  relief, and unrecoverable expenses.  The Court then determined the Kerr factors do not
16  justify a reduction of this amount.  Thus, the Court will award Plaintiff **$2,370,881.67** in
17  fees and expenses.

                                        **BILL OF COSTS**

19        Plaintiff's bill of costs (Doc. 366) claims $8,426.25 in taxable costs.  Defendants
20  filed a response (Doc. 372) arguing the Court should reduce Plaintiff's taxable costs by
21  50% to 70% to account for Plaintiff's limited success in litigating the case.  As explained
22  in detail above, the Court finds Plaintiff's requested fees and costs adequately account for
23  its limited but substantial success in this matter.  The Court finds no reduction to the bill
24  of costs is appropriate.

25       **Accordingly,**

26       **IT IS ORDERED** Plaintiff's Motion for an Award of Attorneys' Fees is
27  **GRANTED IN PART** and **DENIED IN PART**.  Defendants shall pay Plaintiff
28  **$2,370,881.67** in attorneys' fees and expenses.

**IT IS FURTHER ORDERED** Defendants shall pay Plaintiff **$8,426.25** for costs as outlined in Plaintiff's Bill of Costs (Doc. 366).

Dated this 19th day of March, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge